Donovan SPENCE, Petitioner,

v.

**SUPERINTENDENT, Great Meadow Correctional Facility, and Commissioner, New York State Department of Correctional Services, Respondents.**

No. 95 CV 3296 RR.

United States District Court,
E.D. New York.

Nov. 18, 1997.

Malvina Nathanson, New York, New York, Attorney for Petitioner.

Charles J. Hynes, District Attorney of Kings County by Amy Appelbaum, Roseann B. MacKechnie, Stephen D. Kong, Asst. Dist. Attys., Brooklyn, New York, Attorney for Respondent.

RAGGI, District Judge.

Donovan Spence, who is presently incarcerated for armed robbery and related crimes, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1994 & Supp.1997). Spence pleaded guilty to these crimes in 1992 pursuant to an agreement that originally contemplated a probationary sentence on satisfactory completion of various conditions, including one that he not be rearrested. Within a few weeks of his plea, Spence was again arrested and charged with a second robbery. As a result, the sentencing judge in his original case found him to have breached his plea agreement and, accordingly, imposed a jail term of eight and one-third to twenty-five years. Spence was later acquitted of the second robbery charge.

At issue before this court is the standard of review required by the Due Process Clause to hold a defendant in violation of a plea agreement's no-arrest condition when the defendant denies committing the crime for which he was arrested. Spence contends that, under those circumstances, due process requires a court to be persuaded by at least a preponderance of the evidence that the de-

fendant committed the newly-charged crime. He further submits that, absent such a finding, an incarceratory sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. Finally, Spence argues that the trial court erred in failing to interpret his plea agreement expressly to bar further criminal conduct and not simply rearrest. Respondents submit that petitioner's claims must be rejected because they are procedurally barred, without merit, or call for the articulation of a new procedural rule that cannot be applied retroactively on habeas corpus review.

Having carefully reviewed the submissions of the parties and heard oral argument, this court finds that Spence's challenge to the interpretation of his plea agreement is procedurally barred from federal review. As to the other points raised, a writ of habeas corpus must be denied because (1) Spence's due process claim seeks the announcement of a new procedural rule that could not be applied retroactively to his case, *see Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and (2) his Eighth Amendment claim is without merit.

### *Factual and Procedural Background*

1. *The May 29, 1992 Robbery and Spence's Guilty Plea*

At approximately 11:14 a.m. on May 29, 1992, the petitioner Donovan Spence, his fifteen-year old brother Nathoe Spence, and Kellon Quamina entered a store at 1308 Nostrand Avenue in Brooklyn. The three men pointed loaded firearms at the store occupants and demanded the surrender of any money and valuables. A number of victims were kicked, punched, and beaten until they complied with these demands. *See* Transcript, September 30, 1992, at 35–37; Transcript, December 1, 1992, at 15.

On September 30, 1992, all three robbers pleaded guilty to a thirty-five count indictment.[1] Before specifically allocuting Donovan Spence, Judge Michael Feinberg reviewed the terms of the plea agreement with Spence's mother in the presence of petitioner and his counsel, Gregory Clarke:[2]

> Mrs. Spence, regarding Donovan Spence ... he's going to be put into this Court Employment Project for a period of one year. There are going to be curfews imposed that will not interfere with his school.... If those curfews or any other part of the Court Employment Project is violated, your son is going to be brought back to this court, sentencing will be advanced and your son will receive a period of incarceration from me of eight and one third to 25 years.
>
> . . . .
>
> [I]f he gets rearrested—and that goes for Mr. Quamina—rearrest is a violation, rearrested, I'm bringing them back and I'm sentencing them. So if he's out with friends, he's going to learn to say no and walk away.
>
> . . . .
>
> If these programs are completed ... after one year I will impose sentence. Those eligible will receive youthful offender treatment and an additional five years probation.

Transcript, September 30, 1992, at 6–8.[3]

After allocuting petitioner with respect to his participation in the May robbery, the

---

**1.** The three robbers were charged with eleven counts of Robbery in the First Degree, N.Y. Penal Law § 160.15(2), (3), (4) (McKinney 1988), six counts of Robbery in the Second Degree, N.Y. Penal Law § 160.10(1), (2)(a) (McKinney 1988), three counts of Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03 (McKinney 1989), three counts of Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02(4) (McKinney 1989), two counts of Assault in the Second Degree, N.Y. Penal Law § 120.05(2), (6) (McKinney 1987), five counts of Grand Larceny in the Fourth Degree, N.Y. Penal Law § 155.30 (McKinney 1988), and five counts of Criminal Possession of Stolen Property in the Fifth Degree, N.Y. Penal Law § 165.40 (McKinney 1988).

**2.** Apparently the agreement was never reduced to writing, but only discussed orally in open court.

**3.** The District Attorney's office opposed youthful offender treatment for petitioner in light of the fact that he had previously received an adjournment in contemplation of dismissal for a reckless endangerment arrest involving shooting at the windows of an empty car.

court again reviewed with him his obligations pursuant to the plea agreement:

> [Y]ou will continue staying out but you will be supervised by Court Employment and your mom. . . .
>
> . . . .
>
> [I]f I get a report back that you're violating any of the terms of Court Employment or any of the terms the Probation Department may put on when you go there, you're going to come back before me, I'm going to conduct a hearing and if I find that you are violating any of those programs, either by curfew violation or any other violation, I'm going to put you in for eight and a third to 25. . . .
>
> I'm telling you now, if you have no violations and you're not rearrested, you don't get into any other trouble and you're honest and truthful with Probation, whatever you have to do, I will look very favorably at the time of sentence on granting youthful offender treatment and putting you on five years probation. . . .
>
> And if you get rearrested, I'm not going to be bound by any promise as to Y.O. or probation or anything else. If you get rearrested, that's a voluntary choice you made by going out and doing something which you should not have been doing. It rests solely with you. If you get rearrested and you're brought back before me, you can forget the promise and I'm going to sentence you up to the maximum allowed by law—again, it's eight and a third to 25.

*Id.* at 38–43.

### 2. *Spence's Arrest for the October 4, 1992 Robbery*

At approximately 12:40 a.m. on October 4, 1992—only a few days after Spence's guilty plea—two young men drew guns on Bonita Bobbitt and Yolanda Carroll and demanded their jewelry. Ms. Carroll managed to flee, but the men stole Ms. Bobbitt's earrings. Ms. Bobbitt reported the crime to the police, identifying the robbers as brothers she knew from the neighborhood named "Kerith" and "Donovan." On October 6, 1992, Police Detective Edward Alonge searched computerized arrest files for brothers with those names. He identified Kerith and Donovan Spence as possible suspects. Detective Alonge secured a photograph of Donovan Spence and placed it with five other photographs in a spread for display to Ms. Bobbitt. On October 15, 1992, Ms. Bobbitt identified the photograph of Donovan Spence as one of the robbers. On October 20, 1992, police arrested Donovan Spence and placed him in a six-person line-up. Again, Ms. Bobbitt identified him as one of the robbers. Ms. Carroll, who was not shown any photographs, failed to make any identification from the post-arrest line-up.

### 3. *Spence's Sentencing on the May Robbery*

On November 16, 1992, Spence and his new attorney, Gregory Watts, appeared before Judge Feinberg to address the effect of the recent arrest on petitioner's plea agreement. Counsel acknowledged that the promise of a probationary sentence was contingent on Spence not being rearrested—"I know a condition of the plea was a mere arrest," Transcript, November 16, 1992, at 4—but he submitted that the case presented extraordinary circumstances. Specifically, Spence denied any involvement in the Bobbitt robbery and proffered numerous alibi witnesses to support his position. Counsel noted that Ms. Bobbitt was a drug addict whose credibility might be suspect. He further implied that police may have been overzealous in arresting his client knowing that such action would prompt his incarceration for the May robbery. *See id.* at 3–4, 9–10. The trial court offered to vacate Spence's guilty plea on the charges relating to the May robbery and to proceed immediately to trial. *See id.* at 11. When counsel declined the offer, sentencing was set for December 1, 1992. *See id.*

On December 1, 1992, Mr. Watts advised the court that Spence wished to withdraw his guilty plea to the May robbery charges. *See* Transcript, December 1, 1992, at 8–9. In the alternative, counsel sought an adjournment to allow Spence to clear himself at trial of the charges relating to the Bobbitt robbery. *See id.* at 12. The court denied both requests and sentenced Spence to concurrent terms of incarceration of eight and one-third to twenty-five years for each of the eleven counts of First Degree Robbery, five to fifteen years

for each of the six counts of Second Degree Robbery and the three counts of Second Degree Weapon Possession, two and one-third to seven years for each of the three counts of Third Degree Weapon Possession and two counts of Second Degree Assault, one and one-third to four years for each of the five counts of Grand Larceny in the Fourth Degree, and one year for each of the five counts of Fifth Degree Possession of Stolen Property.

On December 15, 1992, defendant filed a notice of appeal with the Appellate Division, Second Department.

*4. Outley Hearing*

Before Spence's direct appeal was heard, the New York Court of Appeals, on February 16, 1993, decided *People v. Outley*, 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356 (1993). At issue in that case was the question that Spence presents to this court: "when a court has made a plea bargain containing a no-arrest condition and the defendant is arrested prior to sentencing for an act which is denied, what basis for the arrest must be shown in order for the court to be relieved of its obligation to impose the bargained-for sentence?" *Id.* at 707, 594 N.Y.S.2d at 685, 610 N.E.2d at 358.

New York's highest court recognized that the question implicated the due process requirement that a sentencing court "assure itself that the information upon which it bases [a] sentence is reliable and accurate." *Id.* at 712, 594 N.Y.S.2d at 687, 610 N.E.2d at 360. Thus, "the mere fact of [an] arrest, without more," would not always suffice to establish breach of a no-arrest clause, since a particular arrest might be "malicious or merely baseless." *Id.* at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361 (citing *Innes v. Dalsheim*, 680 F.Supp. 517 (E.D.N.Y.), *rev'd on other grounds*, 864 F.2d 974 (2d Cir.1988), *cert. denied*, 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989)). If a defendant were to challenge "the validity of the postplea charge or [deny] any involvement in the underlying crime," due process would require the sentencing court to "conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation." *Id.*

The Court of Appeals left "[t]he nature and extent of the inquiry" to the discretion of the sentencing court, but mandated that "[t]he inquiry be of sufficient depth ... that the [sentencing] court can be satisfied—not of defendant's guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge." *Id.* What the Court of Appeals unanimously rejected, however, was a defense argument that due process required a sentencing court "to satisfy itself by a preponderance of the evidence that the defendant has, in fact, committed the crime for which he was arrested." *Id.* at 712, 594 N.Y.S.2d at 688, 610 N.E.2d at 360. It explained that "such a requirement would have the effect of changing the condition of the plea bargain from *not being arrested for a crime to not actually committing a crime*," with the "undesirable consequence of requiring, in effect, 'a minitrial' of the defendant's guilt or innocence on the new charge." *Id.* at 712–13, 594 N.Y.S.2d at 688, 610 N.E.2d at 360–61 (emphasis in original).

Prompted by the decision in *Outley*, Judge Feinberg *sua sponte* recalled petitioner's case on April 15, 1993, to conduct an evidentiary hearing into Spence's alleged violation of his no-arrest clause. Adopting the language of *Outley*, Judge Feinberg explained the nature and purpose of the inquiry:

> The Court will reach the ultimate conclusion of whether or not the arrest under 12238 of '92 was either malicious or baseless, and the defendant at this hearing will be given an opportunity to show that the arrest was without foundation.

> This Court, obviously, need not reach any conclusion and will not reach a conclusion as to the defendant's guilt under 12238 of '92 for the purposes of this hearing or the new charges. But the Court will only seek to determine whether or not there exists a legitimate basis for the arrest on that case.

> . . . .

> The Court will, of course, allow the defendant an adequate opportunity at this hearing to explain any of the circumstances, if he wishes, on the arrest and then reach a determination overall as to whether or not

ultimately the new arrest ... has any basis within the meaning of [*Outley* ].

Transcript, April 15, 1993, at 8–9.

Two witnesses testified for the prosecution at the hearing: Detective Alonge and Assistant District Attorney Thomas G. Luzio. Detective Alonge related his interview with Ms. Bobbitt about the October 4, 1992 robbery of her jewelry, her identification of the robbers as brothers named "Kerith" and "Donovan," his search of computer files to ascertain that "Spence" was the likely last name of these two brothers, his display of a photo spread to Ms. Bobbitt, her identification of petitioner from that spread, and her subsequent line-up identification of him. On cross-examination, Detective Alonge acknowledged that Yolanda Carroll, who had also been present when the robbery began, had not identified anyone when she viewed Donovan Spence in the line-up. He further stated that the day before arresting petitioner he learned from ADA Luzio that Spence was awaiting sentence. He acknowledged knowing that Spence had pleaded guilty pursuant to an agreement with a no-arrest clause, but he could not recall if he learned this from Luzio on October 19, 1992, or sometime after petitioner's arrest the following day. He insisted that he had already decided to arrest Spence based on Ms. Bobbitt's photo identification. ADA Luzio testified that, sometime during his conversation with Detective Alonge and his partner, he told one or both detectives that Spence's sentence would be enhanced if he were arrested.

Petitioner called no witnesses.[4] Instead he submitted copies of the testimony he and his alibi witnesses had given before the grand jury that indicted him for the Bobbitt robbery. In this testimony, Spence denied any involvement in that crime. He insisted, and the alibi witnesses confirmed, that he was home with family and friends from early evening until well past midnight on October 4, 1992.

On May 13, 1993, the trial court found that petitioner had breached the no-arrest clause of his plea agreement, that the police had not

been motivated by malice in their arrest of Spence for the Bobbitt robbery, and that there was a legitimate basis for charging him with that crime.

It is clear from the evidence adduced at that hearing and the Grand Jury proceedings that there was a clear violation of the no arrest condition and that that no arrest condition was breached by the arrest of October 20, 1992. Again, regarding that arrest—

. . . .

The hearing clearly and amply demonstrated that the arrest herein, the new arrest, was neither malicious or baseless, that there was a legitimate basis for the arrest.

The subsequent indictment in that—in the new case constitutes additional filter for the quality of the arrest.

. . . .

It is clear to this Court that that arrest, so that this record is very clear, was neither malicious, nor baseless.

. . . .

[T]his Court need not be satisfied with the defendant's guilt of the new charges. This Court is only required to reach a conclusion that the new charges were neither baseless nor malicious and that there was a legitimate basis for that new arrest.

This Court so concludes.

Transcript, May 13, 1993, at 8–10.

In light of these findings, the concurrent sentences of incarceration imposed by the court on December 1, 1992 remained in effect.

5. *The Trial on the Bobbitt Robbery Charges*

In June 1993, Donovan and Kerith Spence were tried before a jury for their alleged participation in the robbery of Bonita Bobbitt. Judge Feinberg presided. The defense vigorously attacked the character of Ms. Bobbitt in order to impeach her credibility. It did not, however, develop any particular

---

4. Judge Feinberg had ruled that he would not allow Spence to examine Bonita Bobbitt at the

hearing. *See* Transcript, April 15, 1993, at 9.

motive explaining why she would falsely implicate the Spence brothers in the charged crime. The defense also offered as alibi witnesses two young women who were college students and friends of the Spence brothers.[5] The jury acquitted.

### 6. Direct Appeal from Spence's Conviction for the May 1992 Robbery

On direct appeal, Spence challenged his conviction for the May 1992 robbery on the grounds (1) that he had not knowingly and intentionally waived his right to appeal the enhanced sentence, (2) that the sentencing court's finding that he had violated the no-arrest clause of his plea agreement did not comport with due process, and (3) that under the circumstances of his case, his sentence constituted cruel and unusual punishment.

The due process claim swept broadly. Spence argued inter alia that when a defendant is charged with violating a no-arrest clause, due process requires a clear showing that he actually engaged in some knowing violation of law. Spence asserted that no such showing could be made in his case since he had been acquitted of the Bobbitt robbery. He further addressed the standard of proof required by due process when a defendant denies committing the crime for which he has been arrested. He complained that the ruling in *Outley* had not specified, nor had the trial court applied, *any* standard of proof. He submitted that due process required application of the same standard that controlled probation violation hearings: proof by a preponderance of the evidence. *See* N.Y.Crim. Proc. Law § 410.70(3) (McKinney 1994); Appellant's Brief at 23–26.

The Appellate Division rejected petitioner's due process challenge. It summarily concluded that the hearing conducted by the sentencing court was "sufficient to meet the demands of due process." Moreover, from its own "review of the record," the court ruled that "there clearly was a legitimate basis for the arrest." *People v. Spence*, 203 A.D.2d 497, 497, 610 N.Y.S.2d 595, 596 (1994). The court did not indicate the standard of proof on which it was relying in reaching this conclusion.

In letters filed on May 10, 1994 and May 23, 1994, Spence petitioned the New York Court of Appeals for review of his conviction, noting an issue of first impression: "Whether a defendant who denies a breach of the plea agreement, not to be rearrested, and is acquitted of the underlying charges, nonetheless is given an enhanced sentence after a hearing pursuant to *Outley* ... ?" Petitioner's Letter of May 23, 1994. Leave to appeal was summarily denied on August 26, 1994. *People v. Spence*, 84 N.Y.2d 833, 617 N.Y.S.2d 153, 641 N.E.2d 174 (1994).

On March 21, 1995, Spence, represented by new counsel, Malvina Nathanson, who also appears for him in this habeas corpus proceeding, sought to file an untimely motion to reargue his application for leave to appeal. In a carefully-briefed submission, Ms. Nathanson argued (1) that the sentencing court had misapplied the due process standard articulated in *Outley*, (2) that if the court did not misapply *Outley*, then that decision itself failed adequately to protect due process, and (3) that the sentence imposed violated the Eighth Amendment. In support of her first two claims, counsel contended that due process required more than a facially valid arrest to enhance a sentence for violation of a no-arrest clause. Even if a court were convinced that an arrest was neither baseless nor malicious, due process still required it to ensure that any report of a defendant's conduct was well-founded, since it was what a defendant actually did, not what someone said he did, that should be determinative. In this regard, counsel faulted the sentencing court for not allowing Spence to examine Ms. Bobbitt at the *Outley* hearing and for giving only perfunctory consideration to the grand jury testimony establishing an alibi. Counsel insisted that due process required that the criminal conduct underlying Spence's arrest be supported not simply by probable cause

---

**5.** This court has reviewed the trial transcript. Implicit in defense counsel's reliance on the alibi witnesses was an argument about the defendants' character: would such appealing and level-headed young women get involved with men who were armed robbers? Of course, what the jury did not know, but Judge Feinberg did, was that Donovan Spence was a confessed robber before the night of the Bobbitt robbery.

but by at least a preponderance of the evidence.

On June 15, 1995, the application for leave to appeal was denied as untimely. *People v. Spence*, 86 N.Y.2d 741, 631 N.Y.S.2d 622, 655 N.E.2d 719 (1995).

### 7. *Federal Petition for a Writ of Habeas Corpus*

On August 11, 1995, Spence filed his petition for a writ of habeas corpus with this court. He raised three claims: (1) that it violated due process for the sentencing judge to impose an incarceratory sentence after violation of a no-arrest clause without specific findings that Spence had actually engaged in the criminal conduct leading to his arrest, (2) that an enhanced sentence predicated upon conduct for which Spence was eventually acquitted violated the Eighth Amendment, and (3) that it violated due process to sentence Spence for being rearrested when his plea agreement is fairly interpreted to bar the actual commission of future criminal conduct and not simply rearrest. The petition was referred to Magistrate Judge John L. Caden for report and recommendation.

On March 1, 1996, Magistrate Judge Caden recommended to this court that the petition be denied. He concluded that procedural bars precluded federal review of petitioner's claims. He further found that the "actual innocence" exception to procedural default did not apply to this case. Spence filed objections to Magistrate Judge Caden's report, disputing his conclusion that the first and second claims of the petition had not been fairly presented for state court review, and that the "actual innocence" standard did not apply to this case. No objection was raised to the magistrate's finding that the third claim was procedurally barred. Since that conclusion appears to be supported by the record, it is hereby adopted by the court. The focus of this memorandum will be the first and second claims of Spence's petition.

### Discussion

### I. *Exhaustion and Procedural Bar*

■ An incarcerated prisoner seeking a federal writ of habeas corpus is generally required to exhaust all state remedies before pursuing his claims in federal court. *See* 28 U.S.C. § 2254(b) (1994 & Supp.1997); *Gray v. Netherland*, 518 U.S. 152, ——, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457(1996); *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir.1991). To satisfy this requirement, petitioner must fairly present his federal claims to the highest state court from which a decision can be had, informing the court of both the factual and legal bases for the federal claim asserted. *See Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

■ Spence contends that, contrary to the report of Magistrate Judge Caden, he did exhaust his federal due process claim on direct appeal to the Second Department. This court has carefully reviewed petitioner's brief to that court. It is satisfied that, among a myriad of arguments, Spence did present the claim that federal due process requires a state sentencing court to find by a preponderance of the evidence that a defendant charged with violating a no-arrest clause actually engaged in the criminal conduct for which he was arrested. Specifically, at Point II of his brief, Spence advanced this argument:

> Section 410.70(3) of the Criminal Procedure Law provides that "A finding that the defendant violated a condition of his sentence must be based upon a preponderance of the evidence."

> However, the [New York] Court of Appeals has refused to adopt any evidentiary standard which a court may follow in determining whether a defendant breached a condition of his plea.

> Thus at the hearing on this matter a decision whether there existed a breach of the no-arrest condition was left to the subjective whim of the sentencing court.

> ... If a probationer's due process rights are protected by a summary proceeding which involves an evidentiary standard, this defendant must be afforded the same opportunity to contest the violation of the

no-arrest condition with the same evidentiary standard provided a probationer.

Appellant's Brief at 23–24.

It is a somewhat closer question whether Spence presented his due process claim, as well as his Eighth Amendment claim, for review by New York's Court of Appeals. Respondents cite *Grey v. Hoke*, 933 F.2d at 119–20, to support their claim that Spence's May 10, 1994 and May 24, 1994 letters did not adequately alert the Court of Appeals to these two federal claims. This court does not agree.

In *Grey v. Hoke*, the petitioner raised three quite distinct challenges to his conviction on direct appeal to the Appellate Division: (1) that he had been transported to the scene of the crime for possible identification without probable cause, (2) that the trial had been tainted by prosecutorial misconduct, and (3) that the trial judge had improperly sentenced him. *See id.* at 119. When he thereafter sought leave to appeal the affirmance of his conviction, Grey objected only to the intermediate court's rejection of his first claim. He made no mention of any other issues. *See id.* Under these circumstances, the Second Circuit concluded that "[t]he fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned." *Id.* at 120.

▮ The instant case is distinguishable from *Grey v. Hoke*. In moving for review by the Court of Appeals, Spence did identify "an issue of first impression," *i.e.*, whether, in light of Spence's acquittal for the Bobbitt robbery, his arrest on that charge could be viewed as a breach of an earlier plea agree-

ment. But the fact of Spence's acquittal appears to have been cited to distinguish petitioner's case from *Outley* and, thus, to bolster the request for review. It did not reflect an abandonment of any legal claims. Presumably, had leave been granted, Spence would have continued to argue both (1) that due process required more than a finding of a valid arrest for acquitted conduct to justify the abrogation of a plea agreement, and (2) that, absent such a finding, his sentence violated the Eighth Amendment.

This court is satisfied that Spence fairly endeavored to exhaust state avenues of review for both of his federal claims.[6]

## II. Due Process

### A. The Standard of Review for Breaches of No-Arrest Conditions in Plea Agreements

Spence submits that he was denied due process of law when the sentencing court found him to have breached the no-arrest condition of his plea agreement without specifically finding by at least a preponderance of the evidence that he had actually committed the conduct leading to his arrest. The sentencing court did not, however, rely on the mere fact of Spence's arrest to find a breach. After an evidentiary hearing, it concluded that the arrest was legitimate, *i.e.*, supported by probable cause to believe that Spence had committed the charged crime. Thus, the issue before this court necessarily focuses on whether due process requires any higher standard of review than probable cause in these circumstances.

▮ The court begins with some basic principles. Sentencing courts generally enjoy wide latitude in the information that they may consider in imposing criminal punishments. *See United States v. Tucker*, 404

---

6. This court's ruling on exhaustion of remedies makes it unnecessary to address further arguments by petitioner objecting to Magistrate Judge Caden's recommendations with respect to (1) the procedural basis for the Court of Appeals ruling on Spence's motion for reconsideration of his leave application, and (2) the inapplicability of the miscarriage of justice exception to procedural defaults in this case.

It is further unnecessary for this court to address the retroactive applicability of that portion of the Antiterrorism and Effective Death Penalty Act that permits a court to deny an application for a writ of habeas corpus on the merits notwithstanding a petitioner's failure to exhaust state remedies. Pub.L. No. 104–132, § 104, 110 Stat. 1214, 1218 (1996) (codified at 28 U.S.C. § 2254(b)(2)). *See Loving v. O'Keefe*, 960 F.Supp. 46, 49 (S.D.N.Y.1997) (applying section retroactively).

U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Williams v. New York,* 337 U.S. 241, 248, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949); see also 18 U.S.C. § 3661 (1985) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). A sentencing court's discretion is, however, subject to the constraints of due process. *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977); *United States v. Pugliese,* 805 F.2d 1117, 1122 (2d Cir.1986). Most particularly, a defendant may not be sentenced on the basis of information that is "materially untrue." *See Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987). Thus, due process mandates that a defendant be given an opportunity to challenge sentencing information that he contends is unreliable. *See United States v. Romano,* 825 F.2d at 728. It is, moreover, the government that generally bears the burden of proving by a preponderance of the evidence any information disputed by a defendant. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91–93, 106 S.Ct. 2411, 2418–20, 91 L.Ed.2d 67 (1986); *United States v. Weinberg,* 852 F.2d 681, 685 (2d Cir.1988); *United States v. Lee,* 818 F.2d 1052, 1057 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987).

A defendant who enters into a plea bargain promising a particular sentence upon satisfactory compliance with certain conditions enters into "a contract in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Ataya,* 864 F.2d 1324, 1329 (7th Cir.1988) (and cases cited therein). For this reason, when the prosecution claims that there has been a breach of the agreement and seeks a sentence in excess of the one originally agreed upon, due process entitles the defendant to "a judicial determination, based on adequate evidence" of the alleged breach. *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69

L.Ed.2d 390 (1981), *accord United States v. Ataya,* 864 F.2d at 1329–30; *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir. 1988).

In this case, Spence's plea agreement promised him a probationary sentence if he complied with various provisions, including a no-arrest condition. It is, of course, undisputed that Spence was arrested within a few days of entering into his plea agreement. Thus, petitioner does not—and could not—contend that this fact was untrue or not adequately proved. Instead, he relies on *People v. Outley,* 80 N.Y.2d at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361, and the district court opinion in *Innes v. Dalsheim,* 680 F.Supp. at 519, to support his claim that due process will not permit the mere fact of an arrest to support a finding that a defendant has breached the no-arrest clause of a plea agreement. Spence contends that because he denied any participation in the Bobbitt robbery and proffered alibi witnesses due process required a finding by at least a preponderance of the evidence that he actually engaged in the charged robbery before he could be found to have breached the no-arrest condition of his plea agreement.

Respondents do not challenge the argument that due process may require proof of more than an arrest to find a defendant in violation of a no-arrest clause. That is, after all, the holding in *People v. Outley,* 80 N.Y.2d at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361. Instead, they note that the preponderance standard was expressly rejected by the New York Court of Appeals in *Outley.*

> Defendants argue that when a defendant denies the postplea criminal conduct, the court must conduct an evidentiary hearing to satisfy itself by a preponderance of the evidence that the defendant has, in fact, committed the crime for which he was arrested.... [W]e decline to adopt [this standard].

80 N.Y.2d at 712, 594 N.Y.S.2d at 688, 610 N.E.2d at 361. The state court required only "an inquiry at which the defendant has an opportunity to show that the arrest is without foundation." *Id.* at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361. The focus of the

sentencing court was not to be on the "defendant's guilt of the new criminal charge" but on "the existence of a legitimate basis for the arrest on that charge." *Id.* Respondents submit that this review, which ensures both that the arrest was supported by probable cause and that there was no overreaching by the police, is adequate to ensure due process when a defendant has accepted a plea bargain with a no-arrest condition.

 The procedures and standards required by due process in any particular circumstance require consideration of a number of factors: (1) the private interest that will be affected by official action, (2) the risk of an erroneous deprivation of that interest if the procedural safeguards and standards proposed by the state are employed, (3) the value of additional or substitute safeguards as compared to the fiscal and administrative burdens that will be incurred by their implementation, and (4) the government interest at stake. *See Mathews v. Eldidge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *United States v. Romano,* 825 F.2d at 729.

 Plainly, Spence's interest in a correct determination as to whether he breached his plea agreement "could not be stronger," since the answer affects whether his sentence is probationary or incarceratory. *See United States v. Romano,* 825 F.2d at 729 (and cases cited therein) (recognizing defendant's strong liberty interest in correct sentencing decision). The state also has a legitimate interest both in enforcing plea agreements and in preventing recurring criminal conduct. Spence did, after all, plead guilty to armed robbery involving the assault of various victims. A term of incarceration would generally be deemed reasonable both to punish and deter such violent crime. In this case, however, the court agreed to forego incarceration and to show Spence considerable leniency—presumably because of his youth—provided he complied with various conditions, including one that he not be rearrested. If Spence was not prepared to abide by this or any of the other conditions of his agreement, the sentencing court might well question whether he was an apt candidate for probation.

 The decisions in *People v. Outley* and *Innes v. Dalsheim* thus make plain that the legitimate government interest in a defendant not being rearrested does not operate in a vacuum. The real purpose of a no-arrest condition is to dissuade a defendant from doing anything unlawful. *See Innes v. Dalsheim,* 680 F.Supp. at 519–20 (no-arrest condition warns a defendant that "if he engage[s] in behavior that le[ads] authorities to arrest and charge him with a crime, he face[s] a higher sentence"). Indeed, in this case, the court's plea colloquy with Spence indicated that the no-arrest condition was intended to deter petitioner from participating in any further wrongdoing: "If you get arrested, that's a voluntary choice you made by going out and doing something which you should not have been doing. It rests solely with you." Transcript, September 30, 1992, at 42. It is the fact of defendant's wrongful behavior and not simply the arrest to which it leads that would indicate that any leniency promised in the original plea agreement was unwarranted. On the other hand, if it genuinely appeared that a defendant had not done anything to justify an arrest, if instead he was maliciously arrested by the police, or falsely or mistakenly accused of criminal conduct, then the state would have no real interest in abandoning the plea agreement.

 Presumably, due process would require that when a defendant is accused of violating the no-arrest condition of a plea agreement, review procedures and standards be implemented that distinguish between arrests that reflect actual wrongdoing by a defendant and those that do not. *See generally Brothers v. Dowdle,* 817 F.2d 1388, 1390 (9th Cir.1987) (Due process does not permit a sentencing court reviewing a defendant's criminal history to "impose a more severe punishment simply because the defendant was in some way entangled with the police." The court "must satisfy itself that the defendant in fact committed the acts in question ... [and not simply] infer wrongful conduct from the arrest or detention alone...."); *State v. Kidwell,* No. 94APA06–883, 1995 WL 68164 (Ohio App. Dist. Feb. 16, 1995) (revocation of probation cannot be predicated solely upon an arrest without additional evidence

of prohibited conduct by the defendant). This appears to have been the goal of the New York Court of Appeals in *Outley* when it ruled that defendants charged with violating no-arrest conditions could challenge the legitimacy of their arrest. Nevertheless, Spence insists that for due process to be served the breach of a no-arrest condition must be supported by a judicial finding by at least a preponderance of the evidence that defendant committed the crime for which he was arrested.

■ Spence's argument has considerable appeal. The preponderance standard is frequently relied upon to resolve factual disputes at adversarial proceedings. While less demanding than proof beyond a reasonable doubt, or even proof by clear and convincing evidence, the preponderance standard nevertheless requires a neutral factfinder to weigh competing evidence and, where appropriate, to make credibility findings before deciding whether a disputed matter is more likely true than not true. *See United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir.), *cert. denied*, 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994); *see also* 4 L. Sand, et al., Modern Federal Jury Instructions: Civil, ¶ 73.01, at 73–4 (1997).

■ By contrast, "probable cause" is a "fluid" standard, "not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *accord Ornelas v. United States*, 517 U.S. 690, ——, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996). It deals more with the probabilities of a given set of circumstances than with the resolution of factual disputes. *See Illinois v. Gates*, 462 U.S. at 235, 103 S.Ct. at 2320. As such, it is a standard often applied to nonadversarial proceedings, such as applications for warrants and grand jury presentations, or to proceedings preliminary to fuller factual hearings. *See, e.g., Morrissey v. Brewer*, 408 U.S. 471, 484–89, 92 S.Ct. 2593, 2601–04, 33 L.Ed.2d 484 (1972) (two-stage consideration for parole revocation: preliminary hearing to determine whether there is probable cause to believe parole has been violated, followed by revocation hearing at which contested facts are reviewed under preponder-

ance standard); *see generally United States v. Miller*, 116 F.3d 641, 669 (2d Cir.1997) (in ruling on admissibility of murder victim's hearsay declarations, a grand jury's finding of probable cause to indict a defendant for murder is "not an acceptable surrogate for a court's finding, after a hearing at which both sides have the opportunity to be heard, that the defendant's responsibility for that murder is established by a preponderance of the evidence").

In urging the advantages of applying a preponderance rather than a probable cause standard to disputes over a defendant's breach of a no-arrest condition, Spence points to the facts of his own case. Soon after Bonita Bobbitt was robbed, she identified her assailants to police as brothers named Donovan and Kerith. Police quickly ascertained that Donovan and Kerith Spence were brothers with arrest records for robberies. Thereafter, Ms. Bobbitt identified Donovan Spence from a photo spread. Spence concedes that these facts established probable cause to support his arrest. *See Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351, 355 (S.D.N.Y.1992) (victim complaints suffice to establish probable cause), *aff'd*, 993 F.2d 1534 (2d Cir.1993), *cert. denied*, 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). Indeed, it is difficult to imagine that any court would find that there was not a "legitimate basis" for the police to arrest Spence. *See People v. Outley*, 80 N.Y.2d at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361. But he also maintains that Ms. Bobbitt was mistaken in her identification of him and points to the fact that he was acquitted by a jury that heard Ms. Bobbitt's testimony as well as that of his alibi witnesses.

■ Of course, an acquittal is not a factual finding that a defendant did not engage in the charged conduct. It is simply a finding that the prosecution has failed to prove its case beyond a reasonable doubt. *See United States v. Watts*, 519 U.S. 148, ——, 117 S.Ct. 633, 637, 136 L.Ed.2d 554 (1997). If, however, Ms. Bobbitt was mistaken in her identification of Spence and if petitioner did spend the entire night of the robbery at home, then he really did nothing to warrant his rearrest

or to violate his plea agreement. An inquiry limited to the legitimacy of the rearrest, *i.e.,* a probable cause inquiry, such as was conducted in this case, never addressed this possibility, much less resolved it. Meanwhile, Spence is incarcerated purportedly for breaching his plea agreement although no neutral factfinder has weighed the competing evidence and independently concluded that his involvement in the Bobbitt robbery was indeed established by a preponderance of the evidence.[7]

■ This court cannot, however, grant Spence habeas corpus relief on his due process claim. Even if it were to conclude that due process does require a sentencing court to apply a preponderance of the evidence rather than probable cause standard when a defendant charged with breaching the no-arrest condition of a plea agreement denies committing the underlying crime, such a holding would constitute a "new rule" that could not be applied on collateral review. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

### B. *The Applicability of Teague v. Lane to Spence's Due Process Claim*

■ In *Teague v. Lane,* the Supreme Court ruled that a federal court considering a habeas corpus petition cannot announce a new rule of criminal procedure for the benefit of a sentenced state prisoner. *See* 489 U.S. at 305–10, 109 S.Ct. at 1072–75; *accord Butler v. McKellar,* 494 U.S. 407, 412, 110 S.Ct. 1212, 1216, 108 L.Ed.2d 347 (1990). A case announces a new rule "when it breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague v. Lane,* 489 U.S. at 301, 109 S.Ct. at 1070. Only two exceptions are recognized: (1) when a new rule places certain conduct beyond the power of the criminal law-making authority to proscribe, *id.* at 307, 109 S.Ct. at

1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1171, 1180, 28 L.Ed.2d 388 (1971)); and (2) when a new rule is "so central to an accurate determination of innocence or guilt" that without it, "the likelihood of an accurate conviction is seriously diminished," *id.* at 313, 109 S.Ct. at 1077.

■ Petitioner seeks to avoid the application of *Teague* to his due process claim by arguing that he is not seeking the enunciation of any *procedural* rule; he is challenging the state court's failure to consider whether he actually committed the criminal conduct that led to his rearrest. "In other words, petitioner argues that the sentencing court answered the wrong question, not that it arrived at its answer by the wrong procedure." Petitioner's Letter to the Court, March 13, 1997, at 4. In fact, anything that defines the scope of a hearing that must be conducted before liberty is denied—whether relating to the questions that must be resolved or the evidentiary standards that must be applied—is fairly characterized as a rule of procedural due process. At its core, Spence's claim is that the state court did not afford him adequate procedural due process when it held him in violation of the no-arrest condition of his plea agreement. He asserts that the state court had to do more than find that he had been rearrested, and that his rearrest had been legitimate, *i.e.,* not malicious and supported by probable cause. Petitioner submits that to afford him the procedural due process guaranteed by the Constitution, the state court was required to weigh the competing evidence and decide whether his commission of the crime for which he was rearrested was established by a preponderance. Such a ruling by this court would necessarily mandate new procedures to be followed by state courts in violation hearings.

7. Since Judge Feinberg both sentenced Spence for the May 1992 robbery and heard all the evidence at the Bobbitt trial, this court explored with the parties the possibility of voluntarily returning Spence's case to him for a ruling as to whether the evidence adduced in both cases was sufficient to convince him by a preponderance that Spence had participated in the Bobbitt robbery. If Judge Feinberg was so convinced, then

Spence would have received all the process to which he insists he is due. On the other hand, if Judge Feinberg was not so convinced, Spence's due process claim would be brought into even sharper focus for both the New York courts and, ·if necessary, a federal court considering habeas corpus relief. Unfortunately, the parties were not able to reach a settlement along these lines.

Spence argues that, even if his claim does call for a procedural rule, it cannot be deemed a *new* one: "It is hardly new law to assert that where a sentence depends on the resolution of disputed factual issues, a hearing is necessary, or that the disputed facts must be determined by a preponderance of the evidence. *See, e.g., United States v. Fatico,* 579 F.2d 707, 711, 713 (2d Cir. 1978)[,*cert. denied,* 440 U.S. 910, 99 S.Ct. 1221, 59 L.Ed.2d 458 (1979) ].... " Petitioner's Letter to the Court, March 13, 1997, at 5–6. This court agrees that the principle enunciated in *Fatico* is well established, but habeas petitioners cannot cite broad, general principles to avoid *Teague* analysis. *See Sawyer v. Smith,* 497 U.S. 227, 236, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990) (principle of reliability in capital sentencing did not dictate subsequent ruling prohibiting death sentence determination by sentencer who was led to believe responsibility for decision would rest elsewhere). While a petitioner need not point to an earlier case decided on facts identical to his own, he must show that preexisting law was "specific enough to dictate the rule" on which his own conviction or sentence may be held unlawful. *Wright v. West,* 505 U.S. 277, 311, 112 S.Ct. 2482, 2501, 120 L.Ed.2d 225 (1992) (Souter, J., concurring).

For this same reason, case law generally requiring the government to establish the breach of a plea agreement by a preponderance of the evidence is of little assistance to Spence. *See, e.g., United States v. Ataya,* 864 F.2d at 1329–30; *United States v. Packwood,* 848 F.2d at 1011; *United States v. Calabrese,* 645 F.2d at 1390. As already noted, Spence's plea agreement provided for him not to be rearrested. There is no question about the government's ability to prove his subsequent arrest by a preponderance. The real issue in the case is whether due process requires any further inquiry when a defendant denies the criminal conduct underlying an undisputed arrest. *Ataya, Packwood* and *Calabrese* do not address this question. The only cases to do so directly are *People v. Outley,* 80 N.Y.2d at 712, 594 N.Y.S.2d at 688, 610 N.E.2d at 361, and *Innes v. Dalsheim* 680 F.Supp. at 519.

In *Innes,* the court held that "where a breach will subject the defendant to increased punishment, due process requires *some knowing action by the defendant.*" 680 F.Supp. at 519 (emphasis added). But nowhere does it discuss the type of inquiry or standard of review that must be applied in such circumstances. The decision refers only to a defendant's right "to require the prosecution to make *some kind of showing* that he did engage in acts that led to an arrest and charge." *Id.* at 520 (emphasis added). In any event, a district court decision reversed on other grounds can hardly be characterized as the sort of precedent that would have "dictated" the procedural rule Spence now urges.

*Innes* was cited by the New York Court of Appeals in *Outley* to support its authoritative ruling that, when a defendant denies the conduct leading to an arrest, the mere fact of that arrest will not suffice to establish the defendant's breach of a plea agreement's no-arrest clause. *People v. Outley,* 80 N.Y.2d at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361. Indeed, *Outley* is the leading case recognizing a due process right to a judicial inquiry to ensure against malicious or baseless arrests serving as the basis for violating plea agreements. Nevertheless, in *Outley,* the Court of Appeals unanimously rejected the argument that sentencing courts were required to find by a preponderance of the evidence that a defendant had actually committed the crime for which he was arrested. *Id.* at 712–13, 594 N.Y.S.2d at 687–88, 610 N.E.2d at 360–61. It was satisfied that a more flexible inquiry into the legitimacy of the arrest would adequately safeguard defendants' liberty interests. *Id.* at 713, 594 N.Y.S.2d at 688, 610 N.E.2d at 361.

The need for any further procedural safeguards in no-arrest clause cases was thus not compelled by case law existing at the time Spence was sentenced. *See Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990). The propriety of requiring the government to meet a higher standard of proof than that enunciated in *Outley* is a subject "susceptible to debate among reasonable minds." *Butler v. McKellar,* 494 U.S. at 415, 110 S.Ct. at 1217. When

"reasonable jurists may disagree" about the steps the law should take to safeguard constitutional rights, new pronouncements in that area will not be grounds for collateral relief. *See Sawyer v. Smith,* 497 U.S. at 234, 110 S.Ct. at 2827. Accordingly, this court cannot announce and apply any new rule in Spence's case.

In a final effort to avoid having his request for relief characterized as a "new rule," Spence cites case law permitting federal courts to factor acquitted conduct into sentencing decisions if the conduct is proved by a preponderance of the evidence. *See United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–82 (2d Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Sweig,* 454 F.2d 181, 184 (2d Cir.1972). This principle was recently affirmed by the Supreme Court in *United States v. Watts,* 519 U.S. at ——, 117 S.Ct. at 638 While this court agrees that these cases lend support to the merits of Spence's claim, it cannot say that they should have compelled the state courts to reach the result now urged. In the first place, it does not appear that this line of cases was ever cited to the state courts. Second, many of these cases arise in the context of the federal sentencing guidelines and are thus distinguishable. The sentencing guidelines treat acquitted conduct almost identically to conduct for which a defendant has been convicted, thereby giving rise to concerns that may not apply in state court actions where the sentencing judge may have more discretion.

Petitioner submits that even if the relief he seeks calls for a new procedural rule his case falls within the second *Teague* exception for " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Petitioner's Letter to the Court, March 13, 1997, at 7 (quoting *Saffle v. Parks,* 494 U.S. at 495, 110 S.Ct. at 1264).

Preliminarily, this court notes that in *Teague* the Supreme Court held that this "watershed" exception would not be applied to all procedural rules that could conceivably improve the accuracy of the factfinding process, but only to those "without which the likelihood of an accurate conviction is seri-

ously diminished." *Teague v. Lane,* 489 U.S. at 313, 109 S.Ct. at 1077 (drawing on Justice Harlan's opinions in *Desist v. United States,* 394 U.S. 244, 256, 89 S.Ct. 1030, 1037, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting) and *Williams v. United States,* 401 U.S. 667, 675, 693–95, 91 S.Ct. 1171, 1180–81, 28 L.Ed.2d 388 (1971) (Harlan, J., concurring in part and dissenting in part)). In *Teague v. Lane,* the Supreme Court indicated that the procedures critical to ensuring the accuracy of a conviction are those "central to an accurate determination of innocence or guilt." *Id.* If the exception is so limited, it simply does not apply to Spence's case. There is, after all, no question that Spence is guilty of the May 1992 robbery. His complaint is with the accuracy of procedures relating to his sentencing, not his culpability for the crimes of conviction.

Assuming, however, that the second *Teague* exception should be considered when new rules relate to sentencing procedures, *see generally Graham v. Collins,* 506 U.S. 461, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993) (finding that new rule requiring special jury instructions regarding mitigating evidence during sentencing phase of capital case did not come within second *Teague* exception); *Sawyer v. Smith,* 497 U.S. at 242–43, 110 S.Ct. at 2831–32; *Saffle v. Parks,* 494 U.S. at 494–95, 110 S.Ct. at 1263–64, petitioner's case would still not qualify. Whatever the precise scope of the second *Teague* exception, the Supreme Court has repeatedly emphasized that it is "meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." *Graham v. Collins,* 506 U.S. at 478, 113 S.Ct. at 903 (1993) (internal quotation marks and citations omitted). Indeed, in *Teague,* the Supreme Court expressed the belief that it was "unlikely that many such components of basic due process have yet to emerge." *Teague v. Lane,* 489 U.S. at 313, 109 S.Ct. at 1077.

The rule plaintiff seeks does not come within this narrow category. Petitioner was not, after all, sentenced in the absence of any procedural safeguards. He received the protections articulated by the New York Court of Appeals in *Outley.* What he seeks is a

ruling expanding these protections. Specifically, Spence contends that it was not enough for the sentencing court to afford him an evidentiary hearing, or to make findings that his arrest was not the product of police over-reaching and was supported by probable cause to believe he had committed the underlying crime. Spence insists that due process required the trial court to apply a higher standard of review, preponderance of the evidence, in deciding whether he had engaged in the criminal conduct underlying the arrest cited as a breach of his plea agreement.

Until recently, however, sentencing courts routinely "heard evidence and found facts without any prescribed burden of proof at all."

*McMillan v. Pennsylvania,* 477 U.S. at 91, 106 S.Ct. at 2419. It was presumed that neutral judges would resolve sentencing disputes accurately and fairly. While the articulation of particular procedural standards and burdens of proof for sentencing may enhance accuracy and even foster public confidence in the fairness of the process, this court cannot say that without the particular procedural standards urged by petitioner in this case the likelihood of fairly and accurately sentencing defendants charged with violating no-arrest conditions is seriously diminished. *See generally Maietta v. Irvin,* No. 94 Civ. 1592, 1995 WL 505558, at *2 (S.D.N.Y. Aug. 25, 1995) (in habeas petition from defendant whose case was heard together with *Outley* by New York Court of Appeals, district court concluded that due process claim asserting a right to a full evidentiary hearing and not simply an "inquiry" sought a new rule of criminal procedure not within the second *Teague* exception: "a rule requiring a hearing to determine breach of a no-arrest agreement simply does not constitute the type of significant development in the law ... for which the writ of habeas corpus was designed"), *aff'd on other grounds sub nom. Maietta v. Artuz,* 84 F.3d 100 (2d Cir.) (defendant's subsequent guilty plea to rearrest charge made it impossible for him to challenge the validity of that arrest), *cert. denied,* — U.S. —, 117 S.Ct. 386, 136 L.Ed.2d 303 (1996).

The court concludes that the due process claim asserted by Spence seeks a new procedural rule that cannot be applied on habeas corpus review of his case. That part of his habeas corpus petition alleging a violation of due process is denied.

III. *Eighth Amendment*

Spence's Eighth Amendment claim is, in fact, a variation on his due process argument. He asserts that, in sentencing him to a term of incarceration rather than probation, the state court was penalizing him for his rearrest rather than punishing him for the original crime of conviction. He submits that it constituted cruel and unusual punishment to impose an incarceratory sentence based only on a finding that the rearrest was justified, without any inquiry into whether the conduct underlying that arrest was proved by a preponderance of the evidence.

The court rejects petitioner's contention that his sentence must be viewed as a punishment for the rearrest rather than the original crime of conviction. The state court transcripts make plain that the sentencing judge relied on the rearrest simply as a ground to vacate the original promise of probation. The incarceratory sentence was imposed with reference only to the original crime of conviction. Thus, when defense counsel argued that a term of eight and one-third to twenty-five years was excessive, the sentencing court reviewed aggravating factors from the May 1992 robbery.

Let's see how excessive it is.... Let's talk about some of the victims of the first crime.... Mr. Frams (ph) in that store was robbed. His property was recovered. He was beaten up. He was kicked. He was punched by all of the defendants. He was employed as a clerk in the store. It was his second day at work and then he subsequently quit for fear of coming back to work. Miss Lou, who is, she was robbed, she was beaten up, kicked and punched. She was kicked several times in the stomach and in the back and the defendants, including Donovan Spence according to her threatened to kill her and her husband.

Another person, Mr. Duran, one of the defendants held a gun to his back, another held a gun to his head while they both stripped him of his money and jewelry. He was kicked in the face several times. The nature of the crime was horrendous.

Transcript, December 1, 1992, at 15–16.

The court is satisfied that the sentence imposed is within the term mandated by the New York State legislature and not disproportionate to the crime of conviction. *See Harmelin v. Michigan,* 501 U.S. 957, 996, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring, with O'Connor and Souter, JJ.); *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Accordingly, it rejects Spence's Eighth Amendment claim on the merits.

### Conclusion

■ No objections having been raised to the Magistrate Judge's finding that Spence failed to exhaust state remedies for any federal challenge he may have to the sentencing judge's interpretation of his plea agreement, this court hereby dismisses that part of his habeas petition as procedurally barred. The court further rejects petitioner's Eighth Amendment challenge to his sentence as meritless. Petitioner's due process challenge to his sentence would require this court to apply a new rule of criminal procedure to violations of the no-arrest clauses of plea agreements, which cannot be done on collateral review of a conviction absent extraordinary circumstances not present in this case. Accordingly, this part of the petition is also denied. Nevertheless, because this last issue presents a serious legal question, the court grants Spence a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2) (1994 & Supp. 1997); *Nelson v. Walker,* 121 F.3d 828 (2d Cir.1997). The Clerk of the court is to enter judgment in favor of respondents and mark this case closed.

*SO ORDERED.*