Donovan SPENCE, Petitioner–Appellant,

v.

SUPERINTENDENT, GREAT MEADOW CORRECTIONAL FACILITY, and Commissioner, New York State Department of Correctional Services, Respondents–Appellees.

Docket No. 97–2945

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1999

Decided July 18, 2000

Malvina Nathanson, New York, New York, for Petitioner–Appellant.

Amy Appelbaum, Assistant District Attorney, Kings County, Brooklyn, New York (Charles J. Hynes, District Attorney, Roseann B. MacKechnie, Assistant District Attorney, Kings County, Brooklyn, New York, of counsel), for Respondents–Appellees.

Before: WINTER, Chief Judge, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

In September 1992 a New York Supreme Court Justice having defendant Donovan Spence before him on a robbery charge, offered the promise of youthful offender treatment to Spence on the condition that he not engage in any further misconduct or get rearrested. If Spence broke that condition, the judge warned, he would impose a sentence of eight and one-third to 25 years. He then deferred sentence until November 1992 to see if the youth could keep out of trouble. This appeal is about what occurred in the interval and the legal ramifications of those events.

Defendant was quickly rearrested and charged with another robbery, which it turns out he did not commit. But before that was determined, the heavy sentence he was warned about had already been imposed and is presently being served. It is time to correct what we perceive to be a miscarriage of justice, to grant the writ of habeas corpus and to release defendant from prison.

Donovan Spence (petitioner, defendant or appellant) appeals from a judgment entered on November 26, 1997 in the United States District Court for the Eastern District of New York (Raggi, J.), which denied his petition for a writ of habeas corpus, but at the same time found an issue that presented a serious legal question and issued a certificate of appealability. *See Spence v. Superintendent*, 987 F.Supp. 151 (E.D.N.Y.1997). In her published opinion the district judge thoroughly analyzed the issues of exhaustion of state remedies, petitioner's Eighth Amendment challenge and two due process challenges to the state sentence imposed on him. The first due process challenge, although denied, was found to present a serious legal question; the Eighth Amendment issue was ruled to be without merit; and petitioner's third claim, the other due process challenge, the focus of this opinion, was ruled procedurally barred. From this order of denial petitioner appeals.

## BACKGROUND

Eight years ago, on May 29, 1992, Spence and two others robbed a Brooklyn grocery store, taking money from the cash register. Spence pled guilty on September 30, 1992 to multiple robbery counts arising from this single incident. At the plea proceeding New York State Supreme

Court Justice Michael Feinberg explained to him that if he successfully complied with a one-year period of supervision, he would be put on probation and probably be granted youthful offender treatment. The state trial court warned him that if he failed to abide by the conditions set at the acceptance of his plea, he would be sentenced to imprisonment for a term of eight and one-third to 25 years.

Several weeks after the plea was entered, Spence was again arrested for robbery and brought back to state court before the same judge. On November 16, 1992 defense counsel requested an adjournment of sentencing on the robbery of the grocery store—the one that was the subject of the September plea—so that he could examine alibi witnesses on the new robbery charge. An adjournment was granted until December 1, 1992 at which time defendant, with different counsel, moved to withdraw his September guilty plea and asked for an adjournment of sentence on the original robbery charge, telling the court that he had five alibi witnesses: two City Probation employees, a registered nurse, a student, and an employee of the New York Telephone Company, all of whom would testify that defendant was at home, not at the location where the robbery occurred. Trial counsel also noted that the officer responsible for Spence's rearrest knew the terms of the judge's warning and knew that a new arrest would result in an enhanced sentence. The state trial judge denied the motion, and imposed the eight and one-third to 25 year sentence he had warned defendant about. Later, when the new robbery charges went to trial, Spence was acquitted.

In February 1993 the New York Court of Appeals decided *People v. Outley*, 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356 (1993). In that case, New York's highest court held it would violate due process principles to make it a condition of probation that defendant not be arrested, where such arrest leads to an enhanced sentence, without affording defendant an opportunity to demonstrate that the arrest is without foundation. *See id.* at 713, 594 N.Y.S.2d 683, 610 N.E.2d 356.

As a result of that decision, Justice Feinberg held an *Outley* hearing in April 1993 on Spence's new robbery arrest. At its close, he ruled that Spence had clearly violated the "no arrest" condition by being arrested on October 20, 1992, and that the arrest had a legitimate basis, being supported by probable cause. The court ruled the original sentence of eight and one-third to 25 years would stand as imposed.

Defendants appealed to the state appellate division contending that the hearing held to determine if he had violated the no arrest provision of the plea agreement violated due process and that the enhanced sentence constituted cruel and unusual punishment. Both claims were rejected, *see People v. Spence*, 203 A.D.2d 497, 610 N.Y.S.2d 595 (2d Dep't 1994), and leave to appeal to the New York Court of Appeals was denied, *see People v. Spence*, 84 N.Y.2d 833, 617 N.Y.S.2d 153, 641 N.E.2d 174 (1994). Following these appeals in state court, petitioner filed the instant petition on August 11, 1995 in federal district court. In addition to the two federal claims raised on direct appeal, petitioner added a third claim that his sentence violated due process because a condition of the plea agreement was that petitioner not commit a new crime, not that he not be arrested. The petition was denied in November 1997. The instant appeal to this Court taken on December 8, 1997 was heard on February 8, 1999.

The panel that heard the appeal requested additional briefing that was received in late December 1999. We asked the parties to brief the following issues:

(1) whether it violates due process to sentence Spence for being rearrested when his plea agreement may reasonably be interpreted to require the commission of a future criminal act and not merely rearrest;

(2) whether petitioner exhausted his state law remedies as to this question;

(3) whether petitioner has procedurally defaulted on this question on direct appeal; and

(4) whether any ground or exception nonetheless applies to permit its consideration on habeas review.

This request was prompted by the colloquy in New York State Supreme Court, Kings County, during the plea proceeding before Justice Feinberg on September 30, 1992. At that time, the sentencing judge put defendant on probation to be supervised by Court Employment, the probation department and by his mother, who was present in the courtroom that day, with the promise that if Spence had "no violations" and is "not rearrested" and did not "get into any other trouble," that he (the judge) would look "very favorably" at sentencing on granting Spence youthful offender status and giving him five years probation. But, Justice Feinberg continued, "[i]f you get rearrested, that's a voluntary choice you made by going out and doing something which you should not have been doing. It rests solely with you. If you get rearrested ... I'm going to sentence you up to the maximum time allowed by law—again, its eight and a third to 25."

We think the court's instruction to Spence was ambiguous, and susceptible to two meanings: Spence would violate the terms of his probation simply by being rearrested; or, Spence would violate probation only if he committed some wrongful act within his control. That is to say, the plea agreement could be understood either as a "no arrest" or as a "no misconduct" agreement.

The district court and state courts that considered this matter concluded it was a no arrest agreement. We think it was a no misconduct agreement because we do not believe a youthful defendant like Spence would understand that a "no arrest" bargain as Justice Feinberg explained it to him included an arrest in circumstances where he had committed absolutely no wrongful act, and that such arrest unilaterally initiated by the police could certainly not be said to be conduct resting solely with defendant. Our reasons are set out in the ensuing discussion.

## DISCUSSION

### I The No Misconduct Agreement

#### A. *Defendant's Right to Performance of the Agreement*

■ We first review the merits of Spence's claim because they inform our disposition with respect to the threshold question whether his petition, as the district court held, is procedurally barred. Because a defendant pleading guilty pursuant to a plea agreement waives a number of fundamental constitutional rights, *see Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the circumstances surrounding the plea agreement must comport with due process to ensure defendant's understanding of its consequences. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Innes v. Dalsheim,* 864 F.2d 974, 979 (2d Cir.1988). The notion of fundamental fairness embodied in due process implies that whatever promises the government makes in the course of a plea agreement to induce a guilty plea must be fulfilled. *See Santobello v. New York,* 404 U.S. 257, 261–62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In construing the promises made in return for the plea, a court must look to what the parties reasonably understood the terms to mean, and resolve any ambiguity in the agreement in favor of the defendant. *See United States v. Lawlor,* 168 F.3d 633, 636 (2d Cir.1999); *Innes,* 864 F.2d at 979 ("[T]he state must bear the burden for any lack of clarity in the agreement...."). Principles of contract law and special due process concerns for fairness govern our interpretation of plea

agreements. *See United States v. Rodgers*, 101 F.3d 247, 253 (2d Cir.1996).

In Spence's case, the plea agreement was not reduced to writing, but rather reviewed orally by the judge in the presence of petitioner, his counsel, and his mother. *See Spence*, 987 F.Supp. at 155 & n. 2. The transcript of Justice Feinberg's allocution of Spence provides the only basis for understanding the terms of the agreement. Whatever the terms proposed by the prosecution, they were presented to Spence by the sentencing judge, and any meaning they have can only be discerned from the record colloquy. Any promise made by the judge in the course of the colloquy operates as a promise made by the state in exchange for Spence's waiver of rights and guilty plea. Although the sentencing judge clearly communicated the consequences of a breach of his plea agreement to Spence, an explanation of what constituted a breach was not clearly explained, but was left ambiguous.

As noted, the most critical part of the colloquy involved the judge's explanation of what it meant to be "rearrested." Specifically, he told Spence "if you get rearrested, that's a *voluntary choice* you made by *going out and doing something which you should not have been doing.* It rests *solely with you.*" (emphasis added). Spence has persistently maintained in the trial court, on direct appeal and in his habeas petition that his sentence should not be enhanced based on an act he did not commit. It is apparent from his protests that he understood the rearrest provision to cover only those acts over which he had control, as suggested by the judge's own definition of the term.

A defendant in Spence's position, relying solely on a judge's explanation, would understand the crucial term in the condition to mean what the judge defined it to be: misconduct within the defendant's volition that would be a violation of the agreement. By embellishing and defining rearrest in these terms, the sentencing court we think sought to foster in Spence's mind a sense of personal responsibility so that he would abide by the conditions to which he had agreed. As a result, the court should have known that Spence would understand that if he did not do anything wrong, he would not be violating this condition. Where Spence had no reason to know of any other meaning than that apparent from the judge's own words, and the judge had reason to know the meaning Spence would attach to the definition of rearrest, Spence's understanding prevails. *See Restatement (Second) of Contracts* § 201(2)(b) (1981). Construed as it must be in defendant's favor, Spence agreed in exchange for his guilty plea to a "no misconduct" agreement, for breach of which he would receive the full enhanced sentence instead of the youthful offender status and probation he was promised.

Because we find that the condition Spence agreed to specified "no misconduct," we need not address the due process requirements for proving breach of a "no arrest" condition that properly conditions a plea agreement on defendant not being rearrested. Thus, we have no occasion to consider, as the district court did, whether a showing that a post-plea arrest has a "legitimate basis" as required by *Outley* accords a defendant sufficient due process. *See Spence*, 987 F.Supp. at 161–65.

### B. *Proving a Breach of a Plea Agreement*

The essential flaw in the state court post-plea proceeding was its focus on the legitimate basis for Spence's rearrest, rather than on how probable it was that Spence committed the criminal act for which he was arrested, and thus whether he had breached the no misconduct plea agreement. Due process requires the government to prove a breach of a plea agreement by a preponderance of the evidence. *See United States v. Alexander*, 901 F.2d 272, 273 (2d Cir.1990) (per curiam) (affirming district court application of preponderance of the evidence standard to breach of

plea agreement); *see, e.g., United States v. Wells,* 211 F.3d 988, 995 (6th Cir.2000); *Allen v. Hadden,* 57 F.3d 1529, 1534 (10th Cir.1995); *United States v. Tilley,* 964 F.2d 66, 71 (1st Cir.1992); *United States v. Ataya,* 864 F.2d 1324, 1329–30 (7th Cir. 1988); *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988); *cf. United States v. Roman,* 121 F.3d 136, 142 (3d Cir.1997) (holding that defendant as party alleging breach of agreement has burden of proving breach by preponderance of the evidence); *United States v. Laday,* 56 F.3d 24, 26 (5th Cir.1995) (same); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991) (same).

■ As Spence reasonably understood the plea agreement and with its ambiguity construed in his favor, he had bargained for a term of probation in exchange for a promise not to engage in misconduct leading to an arrest. The state was therefore obliged to show by a preponderance of the evidence that he committed the criminal act underlying the arrest. The trial court's inquiry into the circumstances of Spence's second arrest did not meet this standard. Instead, the trial court conducted the hearing only to give defendant an opportunity to show "that the arrest was without foundation," and to establish whether there was a "legitimate basis" for the second arrest "within the meaning of [*Outley* ]."

Instead of what he bargained for—probation and no incarceration if he committed no criminal act—Spence was imprisoned for a term of eight and one-third to 25 years without the government having to prove that he committed the alleged act for which he was rearrested. We recognize that Spence's subsequent acquittal on the charges brought in the wake of his second arrest does not prove he was innocent, but simply that there was reasonable doubt as to his guilt. *See United States v. Watts,* 519 U.S. 148, 155, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). However, the proof in the second trial, including five alibi witnesses, shows clearly and convincingly that it is highly improbable that Spence committed the criminal act on which his rearrest was based.

■ Under the facts here, the state had to show that Spence was guilty of the misconduct that served as the predicate for withdrawing its promise of probation. To remand for such a determination now is futile because under New York law, a sentencing court may not consider conduct for which a defendant has been acquitted. *See People v. Varlack,* 259 A.D.2d 392, 394, 687 N.Y.S.2d 93 (1st Dep't 1999); *People v. Coward,* 100 A.D.2d 628, 628, 473 N.Y.S.2d 591 (2d Dep't 1984). Thus, a state court charged with determining whether Spence breached the no misconduct condition would have to conclude that he did not because, in light of his acquittal, it could not consider the conduct for which he was rearrested.

The conclusion is inescapable that a judge enhancing a defendant's sentence from probation to up to 25 years incarceration, without a showing that defendant breached the terms of the plea agreement, has acted contrary to the basic tenets of due process. Where a defendant agrees to avoid committing misconduct, it is manifestly wrong to void his side of the plea bargain based only upon the legitimacy of an arrest, absent proof that he most likely committed the act charged. The imposition of the heavy term of imprisonment, now being served, is a miscarriage of justice. Consequently, Spence is entitled on the merits of his claim to habeas corpus relief.

## II Bars to Reaching the Merits of Spence's Case

### A. *Exhaustion of Remedies and Procedural Default*

Having considered the merits first, we return to the task of considering and resolving those procedural hurdles that stand in the way of reaching the merits. Spence did not raise the argument on which his relief depends in the state direct

review process, until it was too late. Hence, his claim was procedurally defaulted in state court. We must therefore consider whether the procedural bar based on Spence's previous default may now be overcome.

■ Spence first raised the argument upon which we think he merits relief in his application for reargument after leave to appeal to the New York Court of Appeals was denied. His application was denied on the grounds that it was not timely filed. He presented this same argument as the third claim in his habeas petition to the district court. The magistrate judge found that the claim was not exhausted in the state courts as required by 28 U.S.C. § 2254(b) and (c) because Spence failed to raise the claim on direct appeal. The magistrate judge also ruled that the application for reargument of leave to appeal was denied on the procedural grounds of timeliness and, as a result, the state's highest court was never presented with the merits of Spence's claim. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). The district court adopted the magistrate judge's conclusion that this claim was procedurally barred and that no state forum was available for presenting the unexhausted claim. *See Spence,* 987 F.Supp. at 160.

■ We agree that Spence's claim was not exhausted on direct appeal in the state courts, and recognize that such would ordinarily preclude habeas corpus review. *See Washington v. James,* 996 F.2d 1442, 1446 (2d Cir.1993). But when a claim is procedurally defaulted in state court by failure to abide by state procedural rules and no state remedies remain available to a defendant, his claim is deemed exhausted for purposes of a habeas application. *See Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). New York permits only one application for direct review, *see* N.Y. Rules of Court, Court of Appeals, § 500.10(a) (McKinney 1999), and having failed to raise the claim on direct appeal Spence may not seek collateral relief in New York courts, *see* N.Y.Crim. Proc. Law § 440.10(2)(c) (McKinney 1994); *Strogov v. Attorney Gen.,* 191 F.3d 188, 193 (2d Cir.1999); *Washington,* 996 F.2d at 1447; *Grey,* 933 F.2d at 120. Because Spence failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted.

■ The doctrine of procedural default is based on considerations of comity and finality, and not on a jurisdictional limitation on the power of a federal court under 28 U.S.C. § 2254 to look beyond a state procedural default and consider the merits of a defaulted claim that asserts a constitutional violation. *See Murray v. Carrier,* 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S. 1, 9, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). But procedural default in state court will bar federal habeas review unless the petitioner can either: (1) show cause for the default and actual prejudice as a result of the constitutional violation, *or* (2) demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice," *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546, or, in other words, an unjust incarceration. *See Murray,* 477 U.S. at 496, 106 S.Ct. 2639 ("[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a [writ of habeas] may [be] grant[ed] even in the absence of a showing of cause for the procedural default.").

■ When transporting the concept of "actual innocence" to the sentencing phase of capital trials, the Supreme Court has required that the legal error the defendant raises (his constitutional claim) must have caused an actual error in determining guilt or eligibility for sentence, by "preclud[ing] the development of true facts [or] result[ing] in the admission of false ones." *See Smith v. Murray,* 477 U.S. 527, 537–38, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). In so ruling, the Court has made clear that the availability of actual innocence excep-

tion depends not on the "nature of the penalty" the state imposes, but on whether the constitutional error "undermined the accuracy of the guilt or sentencing determination." *Id.* at 538–39, 106 S.Ct. 2661.

Lower federal courts have followed this principle by recognizing the applicability of the actual innocence exception to the sentencing phase of noncapital cases. *See United States v. Maybeck,* 23 F.3d 888, 893 (4th Cir.1994) (finding no difference between holding defendant innocent of acts required to enhance a sentence in death case and applying parallel rationale in noncapital cases); *Smith v. Collins,* 977 F.2d 951, 958–59 (5th Cir.1992) (assuming actual innocence exception extends to noncapital sentencing procedures); *Pilchak v. Camper,* 935 F.2d 145, 148 (8th Cir.1991) (stating that the Eighth Circuit "while recognizing that the [actual innocence] exception ... is very narrow, has transported the exception into the sentencing phase of a trial" in case involving petitioner not properly the subject of a life sentence because represented by mentally impaired counsel). *But see United States v. Mikalajunas,* 186 F.3d 490, 495 (4th Cir.1999) (limiting actual innocence exception in noncapital cases to review of eligibility for career offender or other habitual offender guideline provisions); *United States v. Richards,* 5 F.3d 1369, 1371 (10th Cir.1993) ("A person cannot be actually innocent of a noncapital sentence....").

Excusing Spence's procedural default and reaching his constitutional claim is fully consonant with the narrow scope of the miscarriage of justice exception. In the context of capital sentencing, the Court has clarified that the exception exists not to introduce mitigating evidence excluded by the constitutional error, but to show that the defendant was actually ineligible for (*i.e.,* actually innocent of), the death penalty under state law. *See Sawyer v. Whitley,* 505 U.S. 333, 347, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). The Court has embraced an understanding that the miscarriage of justice exception is grounded on the critical function of habeas review for " 'correcting a fundamentally unjust incarceration.' " *See Schlup v. Delo,* 513 U.S. 298, 320–21, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (citing favorably *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Because the harshness of the sentence does not affect the habeas analysis and the ultimate issue, the justice of the incarceration, is the same, there is no reason why the actual innocence exception should not apply to noncapital sentencing procedures.

In Spence's case, the constitutional error pertains to the fact that he was actually innocent of breaching the no misconduct condition in his plea agreement—the same breach that the trial judge used as the predicate for his incarceration. By challenging the determination of his responsibility for the act predicating his enhanced sentence, Spence raises precisely the question that the actual innocence exception contemplates. His is a situation where his sentence for the criminal act to which he pled guilty was substantially enhanced based on another act he purportedly committed *after* he pled guilty, but before he was sentenced. Any evidence related to the subsequent act would perforce not have been considered at petitioner's trial, but would only have been reviewed during the sentencing hearing. Due to a constitutional error at that hearing, the trial court did not ask the right question—whether Spence more likely than not committed the second criminal act—and thereby did not adduce the facts fully relevant to that inquiry. Accordingly, we hold that in these circumstances, the actual innocence exception applies to the sentencing phase of a noncapital trial.

If defendant did not commit the second act, there is no justifiable basis for a court departing from a promised sentence to impose a harsher one. Where a sentencing court relies on the commission of an act subsequent to trial or to a guilty plea as grounds for raising the defendant's sentence for the original conviction, a petition-

er may properly challenge the conclusion that he committed the subsequent act on the ground that he was actually innocent of it. Giving petitioner an opportunity to make this showing on collateral review, even if procedurally defaulted on direct review, will prevent a quintessential miscarriage of justice: a person being punished for an act he did not commit. *Cf. Sawyer,* 505 U.S. at 340, 112 S.Ct. 2514 ("A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."). Thus, the actual innocence inquiry will focus on the reliability of those facts that make defendant eligible for a harsher sentence under his agreement with the state. *See id.* at 346–47, 112 S.Ct. 2514.

In the context of capital sentencing, the Supreme Court has set a high hurdle for a petitioner to show a fundamental miscarriage of justice based on actual innocence. It held that "to show 'actual innocence' one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty...." *Id.* at 336, 112 S.Ct. 2514; *see also Calderon v. Thompson,* 523 U.S. 538, 559–60, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (clarifying that the "clear and convincing" standard applies to show actual innocence in sentencing, where a lower standard is required to show actual innocence of the crime itself).

 Applying this demanding standard of proof to Spence's case, our inquiry is then whether, by clear and convincing evidence, defendant has shown that he is actually innocent of the act on which his harsher sentence was based. *See Sawyer,* 505 U.S. at 348, 112 S.Ct. 2514; *Smith v. Collins,* 977 F.2d at 959. Where a petitioner shows by clear and convincing proof that he is actually innocent of the conduct on which his sentence is based, the incar-

ceration is fundamentally unjust and the miscarriage of justice exception to the procedural default bar applies. *See Washington,* 996 F.2d at 1450 ("Error rises to the level of 'miscarriage of justice' not because it is conspicuous, but because of the nature or seriousness of its *effect.*").

At his post-rearrest hearing, Spence submitted his grand jury testimony in which he denied any involvement in the second crime. *See Spence,* 987 F.Supp. at 158. More importantly, he submitted testimony from five reputable alibi witnesses who confirmed his claim that he had been home with family and friends at the time the crime was committed. *See id.* At the hearing, the arresting officer admitted that one of the two victims could not identify Spence either from photographs or in a lineup. The one victim who did identify Spence was reputedly a drug addict and perhaps unreliable as a witness. Again, it was clear that the arresting officer knew prior to arresting him of Spence's plea agreement and that another arrest would enhance his sentence for the first conviction. And, of course, the jury that heard Spence's case acquitted him.

This evidence clearly and convincingly demonstrates that no reasonable finder of fact could have determined that Spence committed a criminal act in violation of his plea agreement that would have made him eligible for a harsher sentence. We conclude therefore that Spence was actually innocent of the act for which he received an enhanced sentence. Such a manifest injustice brings petitioner within the fundamental miscarriage of justice exception.[1]

### B. *Further Avenue for Pursuing Claim in State Court*

The state further argues that Spence retains an unexhausted avenue to pursue his claim in state court, *i.e.,* by a motion to set aside the judgment pursuant to

---

1. We note that this conclusion as to the sufficiency of the evidence does not conflict with the trial court's conclusion that a minimal

"legitimate basis" for Spence's rearrest was shown in the post-plea hearing.

N.Y.Crim. Proc. Law § 440.20(1) (McKinney 1994). This section provides that a defendant, at any time after entry of judgment, may move to set aside a sentence as "unauthorized, illegally imposed or otherwise invalid as a matter of law." In its Memorandum of Law to the district court opposing Spence's petition, the state did not assert § 440.20 as a nonexhaustion defense to his third claim. Instead, in the context of the third claim, the state argued nonexhaustion based on petitioner's failure to fairly present the claim to the Appellate Division or the Court of Appeals. It further asserted that "the defendant has no available state forum in which to raise this claim." Thus, the nonexhaustion of § 440.20 as a defense to this claim is raised for the first time on appeal.

◼ The Supreme Court has held that "[w]hen the State answers a habeas corpus petition, it has a duty to advise the district court whether the prisoner has, in fact, exhausted all available state remedies." *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *see* Rules Governing § 2254 Cases in the United States Dist. Cts., 28 U.S.C. pt. VI, ch. 153, Rule 5 ("[The answer] shall state whether the petitioner has exhausted his state remedies including any post-conviction remedies available to him ...."). When the state raises a nonexhaustion claim and indicates a potential post-conviction remedy for the first time on appeal, an appellate court must determine whether the interests of comity, federalism, and the administration of justice will be better served by addressing the merits or requiring a series of additional state and district court proceedings. *See Granberry*, 481 U.S. at 134–36, 107 S.Ct. 1671; *Sanders v. Sullivan*, 863 F.2d 218, 221 (2d Cir.1988). If the case presents an issue involving an unresolved question of fact or state law, requiring full exhaustion may be appropriate. But if "it is evident that a miscarriage of justice has occurred, it may ... be appropriate for the court of appeals to hold that the nonexhaustion defense has been waived in order to avoid unnecessary delay in granting relief that is plainly warranted." *Granberry*, 481 U.S. at 135, 107 S.Ct. 1671. We have ruled that the "miscarriage of justice" exception in the *Granberry* context should be construed more liberally than in *Sawyer*. *See Washington*, 996 F.2d at 1450.

◼ We have previously assumed, without deciding, that § 440.20 is available for remedying a claim that a sentence was imposed in violation of a federal right. *See Levine v. Commissioner*, 44 F.3d 121, 126 (2d Cir.1995). Nor do we need to decide this issue now since we retain discretion to consider the merits of the claim even if this avenue for relief is available. Were we to dismiss the habeas petition without prejudice and permit petitioner to file a motion in the state court pursuant to § 440.20, defendant would either succeed and be resentenced to the bargained-for term of probation, or not succeed, requiring further federal proceedings on his claim with no further procedural bar to reaching the merits.[2] *See Ylst v. Nunnemaker*, 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.").

◼ Further review in federal court is not barred by the one-year statute of limitations found in 28 U.S.C. § 2244(d)(1) because the period of limitations has been and would continue to be tolled during the

---

**2.** Because Spence's petition was filed before the effective date of the 1996 amendments to 28 U.S.C. § 2254, those amendments do not apply to the instant petition. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Hence the new provision of 28 U.S.C. § 2254(b)(3) requiring that a government waiver of the exhaustion defense be explicit does not apply to this case. However, the amended version of § 2254 would apply to a petition he might file after further state proceedings. *See Mancuso v. Herbert*, 166 F.3d 97, 101 (2d Cir.1999).

pendency of the federal habeas proceedings and state post-conviction review. *See Walker v. Artuz*, 208 F.3d 357, 361–62 (2d Cir.2000). Since Spence's claim would be the same in both his original and subsequent habeas petitions, his new petition would not be a "successive petition" within the meaning of 28 U.S.C. § 2254(b)(1), *see Stewart v. Martinez–Villareal*, 523 U.S. 637, 643–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), and therefore be "properly filed" for tolling purposes. *See Walker*, 208 F.3d at 360. In sum, if the state court on § 440.20 review did not grant Spence relief, relief would still be available to him after additional extensive proceedings in federal court.

Because there was a fundamental miscarriage of justice in Spence being deprived of his bargained-for sentence, it is appropriate to deem the nonexhaustion defense based on a potential § 440.20 motion waived.

### C. *Failure to Object to Magistrate's Findings*

One final hurdle remains. In the district court proceedings the magistrate judge found that all of Spence's claims were procedurally barred from federal review; Spence failed to object to the finding that his third claim was procedurally barred. The district court adopted that finding, but focused its opinion on Spence's other claims. *See* 987 F.Supp. at 160.

■ A party may serve and file objections to a magistrate judge's report within ten days after being served with it. *See* 28 U.S.C. § 636(b)(1). Failure to timely object to a report generally waives any further judicial review of the findings contained in the report. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir.1992). However, because the waiver rule is nonjurisdictional, we "may excuse the default in the interests of justice." *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Such discretion is exercised based on, among other factors, whether the defaulted argument has sub-

stantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulting party. *See Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1268 (10th Cir.1999); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir.1996). We exercise our interests of justice discretion here, where a grave injustice may be avoided, by excusing the default and deciding the case on its merits.

### III Remedy

■ Spence is not charged with violating any of the conditions set by the sentencing judge, except for the ambiguous "no misconduct" provision. In light of his subsequent acquittal, the act he was alleged to have committed may not now be considered in sentencing him. Spence therefore would stand before a state trial judge having not breached his side of the plea agreement. Ordinarily, the remedy for the state's breach of a plea agreement is either to enforce the bargain made or to allow the defendant to withdraw his guilty plea. *See Santobello*, 404 U.S. at 263, 92 S.Ct. 495 (leaving choice to state court on remand); *United States v. Bohn*, 959 F.2d 389, 391 (2d Cir.1992) (leaving choice to district court in a federal prosecution); *Mosher v. Lavallee*, 491 F.2d 1346, 1348 (2d Cir.1974) (leaving state court the option of giving defendant sentence he bargained for or permitting withdrawal of guilty plea).

■ The remedy varies according to what promise was broken as revealed by the facts of each case. *See United States v. Brody*, 808 F.2d 944, 948 (2d Cir.1986). Where the agreement's breach touches the essence of the plea agreement, specific performance in the form of resentencing is appropriate. *See id.* Unlike in *Brody*, comity within the federal system is an additional concern when choosing the appropriate remedy in this case. Under New York law, whether a defendant is entitled to specific performance is a "mat-

ter of essential fairness." *People v. McConnell*, 49 N.Y.2d 340, 348–49, 425 N.Y.S.2d 794, 402 N.E.2d 133 (1980). Deciding whether to grant specific performance implicates the concern that promises made by state officials not lightly be disregarded, and consideration of the detrimental effect to the administration of criminal justice should it appear that the state unilaterally reneges on a plea bargain when defendant upholds his end of an agreement. *See id.* at 349, 425 N.Y.S.2d 794, 402 N.E.2d 133.

In exercising its discretion to fix an appropriate sentence, a trial court may properly consider reasons for departing from the sentence promised in the plea agreement. *See People v. Schultz*, 73 N.Y.2d 757, 758, 536 N.Y.S.2d 46, 532 N.E.2d 1274 (1988). And a defendant who, like Spence, has not changed his position detrimentally based on the promise is generally entitled only to withdraw his plea, "if the court concludes that it cannot adhere to the promise given." *McConnell*, 49 N.Y.2d at 347, 425 N.Y.S.2d 794, 402 N.E.2d 133. But because Spence upheld his end of the agreement so long as he was allowed to, there is no basis for a court to conclude it could not adhere to its promise, and essential fairness mandates specific performance of the sentence Spence bargained for.

Where defendant has already been imprisoned for eight years, nearly the minimum term of the sentence imposed by the trial judge, after he had been promised probation, it is unfair to remand for a state sentencing court to exercise an option that would force Spence to forsake a bargain he had kept, withdraw his plea, and face trial. While we are cognizant of the costs to society that attend habeas corpus jurisdiction, *see Smith*, 477 U.S. at 539, 106 S.Ct. 2661, we see no state interest sufficient to outweigh the miscarriage of justice evident in this case.

## CONCLUSION

In the unusual circumstances presented in this case, and to prevent this miscar-riage of justice from continuing, we direct the district court to grant Spence's petition for a writ of habeas corpus and to order his release from prison.