OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant moves to set aside his sentence under CPL 440.20 on the ground that an enhanced sentence was given to him in violation of his plea agreement.
Procedural Background
Charged by indictment with grand larceny in the third degree (three counts), and grand larceny in the fourth degree (four counts), defendant pleaded guilty, with counsel present, to the entire indictment, by way of a written plea agreement. Defendant was promised a sentence of two to four years’ imprisonment. The court’s promised sentence was conditioned upon certain requirements, which were set forth in the written agreement, and were further explained by the court orally on the record. The relevant condition of the written plea agreement provided that the court would not permit defendant to withdraw his plea (see, crossed-out provision), would not be bound by its promised term of incarceration, and could elect to sentence the defendant “[a]s it deems appropriate,” should the defendant “[v]iolate the law” prior to sentencing. (Plea agreement and colloquy 4 [“should I violate the law * * * between now and my sentencing, the court * * * (may enhance)”].) By contrast, the court orally advised the defendant, during the plea colloquy, that the sentence would be enhanced to the *3 maximum of 10 to 20 years if, prior to sentencing, the defendant were to “get arrested.” (Transcript of plea, at 9, lines 4-5 [if “you get arrested between now and that time (i.e., sentencing date) * * * you’ll receive a maximum * * * you’ll serve a minimum of ten years, not to exceed twenty years”] .)[1]
Sentencing on the plea was scheduled for July 13, 1999. On June 24, 1999, however, the defendant was arrested on other charges. An Outley hearing was held related to that new arrest (see, People v Outley, 80 NY2d 702 [1993]), and on August 18, 1999 the defendant was sentenced to an enhanced term of incarceration of 71/2 to 15 years, the sentencing court evidently having decided that its promised 10-to-20-year maximum sentence was not warranted. Defendant served a notice of appeal, but that appeal has not been perfected. The written plea agreement also included a waiver of an appeal. In January 2000, after defendant was given the enhanced sentence, the Grand Jury heard the evidence concerning the June 24th charges, and returned a “No True Bill.” County Court sealed the file. Defendant now moves for an order setting aside the sentence pursuant to CPL 440.20 (1). Although defendant’s pro se motion papers mention CPL 440.10, the factual contentions and arguments supporting the motion make clear that relief under CPL 440.20 is desired.
Discussion
The motion to set aside the sentence must be considered notwithstanding defendant’s ability to present the issue upon a direct appeal. (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 440.20, at 558-559.) Defendant asserts that, because the Grand Jury ultimately failed to indict him after his arrest on the new charges, and further, *4 because following the “no bill,” all records of those new charges were ordered sealed by Monroe County Court, they should not have been considered by the trial court in determining sentence. In the final analysis, he interprets his plea agreement as involving a “no misconduct” enhancement provision, not simply a “no arrest” enhancement provision, and he seeks retroactive effect of the “no bill” as conclusive evidence that he did not commit the crimes for which he was arrested.
In determining whether the plea agreement evidenced by this record involves a “no misconduct” enhancement provision or a “no arrest” provision, a reviewing court is guided by certain well-defined principles. “In construing the promises made in return for the plea, a court must look to what the parties reasonably understood the terms to mean, and resolve any ambiguity in the agreement in favor of the defendant.” (Spence v Superintendent, 219 F3d 162, 167 [2d Cir 2000].) “[T]he state must bear the burden for any lack of clarity in the agreement.” (Innes v Dalsheim, 864 F2d 974, 979 [2d Cir 1988], supra [collecting authorities].)
Here, the written agreement, taken by itself, is most assuredly a “no misconduct” agreement. (See, Spence v Superintendent, 219 F3d, supra, at 168.) The written agreement made no reference, even, to the concept of an arrest. It provided that enhancement would occur only “should I violate the law.” The oral plea colloquy, however, involved a “no arrest” enhancement provision. The court asked defendant whether he understood that, “if you don’t show up * * * for sentencing, or you get arrested between now and that time,” he would receive an enhanced sentence. Defendant replied, “Yes, I do.” The difference is substantial. On a mere “no arrest” enhancement provision, the People need only prove “a legitimate basis for the arrest” without also proving that defendant actually committed the postplea offense which led to the arrest. (People v Outley, 80 NY2d, supra, at 713.) Under a “no misconduct” enhancement provision, the People must prove “by a preponderance of the evidence that [defendant] committed the criminal act underlying the arrest.” (Spence v Superintendent, 219 F3d, at 169.) The presence of these clearly conflicting terms renders the agreement ambiguous because “it cannot be said that The plea bargain * * * is susceptible to but one interpretation.’ ” (People v Reyes, 167 AD2d 920, 921 [4th Dept 1990], quoting People v Cataldo, 39 NY2d 578, 580 [1976].) As set forth above, the ambiguity must be resolved in defendant’s favor.
“As * * * [defendant] reasonably understood the plea agreement and with its ambiguity construed in his favor, he had *5 bargained for a term of * * * [2 to 4 years] in exchange for a promise not to engage in misconduct [constituting a violation of the law] leading to an arrest.” (Spence v Superintendent, 219 F3d, supra, at 169.) The District Attorney “was therefore obliged to show by a preponderance of the evidence that he committed the criminal act underlying the arrest.” (Id., 219 F3d, at 169.) This burden cannot be met without presentation of “ ‘reliable and accurate’ ” information that, indeed, defendant violated the law. (People v Naranjo, 89 NY2d 1047, 1049 [1997]; People v Outley, 80 NY2d, supra, at 712; People v Parker, 271 AD2d 63 [4th Dept 2000].) Moreover, when the sentencing court only considers whether there was a legitimate basis for the arrest within the meaning of People v Outley (supra) “without [in addition requiring] the government * * * to prove that he committed the alleged act for which he was rearrested [,] * * * it is manifestly wrong to void [defendant’s] side of the plea bargain based only upon the legitimacy of an arrest, absent proof that he most likely committed the act charged.” (Spence v Superintendent, 219 F3d, at 169.)
Application of these principles to defendant’s case, however, does not help him on this motion. The sentencing court conducted a hearing pursuant to People v Outley (supra), and ultimately applied the Outley standard to what it considered was a “no arrest” enhancement provision. But the proof submitted by the prosecution, and the court’s subsequent factual findings, went considerably beyond what Outley requires. Defendant’s June 24th arrest involved a charge of grand larceny in the fourth degree and criminal impersonation in the second degree. The People’s proof at the Outley hearing consisted of the victim’s testimony, which fully described conduct of the perpetrator sufficient to satisfy each of the elements of these two crimes. Although the victim could not identify the defendant from a photo lineup, and was not asked to identify the defendant at the Outley hearing, he testified that the perpetrator touched his car in a number of places during commission of the crimes. The car’s surface was subsequently analyzed by the police and was found to contain defendant’s fingerprints. Expert testimony concerning the lifting of the prints, and the fingerprint analysis showing that they matched fingerprints of the defendant, was fully presented at the Outley hearing, and was subject to cross-examination. At the conclusion of the hearing, the sentencing court referred to the People’s standard of proof under Outley, but found from the evidence presented that the testimony “more than sufficiently establishes a legitimate basis *6 for his arrest.” (Hearing transcript, at 161.) In fact, the People tried their entire case at the hearing.
On this record, therefore, the People met the standard of proof — that the defendant “most likely committed the act charged” — held applicable to this type of plea agreement in Spence v Superintendent (219 F3d, supra, at 169). There was preponderant evidence of guilt of the underlying charge. Furthermore, this court’s careful reading of the entire record of the Outley hearing yields the ready conclusion that there was clear and convincing evidence of guilt. Whether such additional finding is necessary in this case, because of the extent of the sentence enhancement, is open to debate. (See, United States v Watts, 519 US 148, 156; United States v Gigante, 94 F3d 53, 56 [2d Cir 1996].) But this court can make such a finding without hesitation on this record.
The difficulty, however, arises from a number of State cases which clearly assume that a sentencing court’s consideration of conduct which is the subject of an acquittal voids the sentence. (See People v Hall, 46 NY2d 873, 875 [1979], and cases collected at People v Murray, 184 Misc 2d 755 [Sup Ct, Kings County 2000].) As persuasively demonstrated in Murray, however, these cases are not supported by citation to statute (the CPL contains no such prohibition), and are decisions interpreting the Federal Constitution which are no longer authoritative in light of the Supreme Court’s decision in United States v Watts (519 US 148 [1997] [Per Curiam], supra). Inasmuch as an acquittal “ ‘does not prove that the defendant is innocent,’ ” but only “ ‘proves the existence of a reasonable doubt as to his guilt,’ ” and inasmuch as “it is impossible to know exactly why a jury found a defendant not guilty on a certain charge,” and that a “jury cannot be said to have ‘necessarily rejected’ any facts when it returns a general verdict of not guilty,” the “acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.” (United States v Watts, 519 US, at 155, 157, quoting United States v One Assortment of 89 Firearms, 465 US 354, 361; see also, Reed v State of New York, 78 NY2d 1, 7 [1991] [“(a)n acquittal of criminal charges is not equivalent to a finding of innocence” and it does not have preclusive effect in a subsequent proceeding involving a lower standard of proof].) The extensive citation of authority in People v Storelli (216 AD2d 891 [4th Dept 1995]) shows full recognition of these principles, although they were not invoked by the facts of that *7 case. (See also, People v Madera, 262 AD2d 986 [4th Dept 1999] [same — by citation of People v Villanueva, 144 AD2d 285 (1st Dept 1988) (“a court may not use extraneous crimes to enhance a sentence unless it first has ascertained, by way of accurate, reliable evidence that defendant actually committed those crimes”)].) When the Supreme Court has ruled on a Federal constitutional issue, its decision on the Federal issue must be followed in favor of State decisions to the contrary. (Cf., People v Joseph, 85 AD2d 546, 546-547 [1st Dept 1981].) Accordingly, the sentencing court was entitled to consider, given the nature and quality of the proof submitted at the Outley hearing, conduct that was the subject of an acquittal.[2]
That this case involves a “no bill” by a Grand Jury does not alter the result. Just as no inference of a fact finding may be made by a general acquittal, a general “no bill” also does not permit an inference of fact finding, given that the “authority to indict upon a showing of sufficient evidence is permissive only” under GPL 190.65 (1). (People v Sullivan, 68 NY2d 495, 501 [1986] [the statute carries forward for New York “centuries of history” vouchsafing to a Grand Jury the “power to extend lenity” to a defendant who might otherwise lawfully suffer an indictment].) Accordingly, the sentencing court was permitted to consider defendant’s conduct underlying his arrest despite the “no bill.” In summary, there is no statutory bar to consideration of conduct underlying an acquittal or “no bill” in the Criminal Procedure Law. Because the State cases holding that such a bar exists have been abrogated by the Supreme Court’s decision in Watts (supra), and no State constitutional rule has been created by our Court of Appeals at variance with Watts,[3] the court finds that the sentence enhancement of which the defendant complains was constitutionally appropriate.
*8 Conclusion
Defendant’s motion to vacate the sentence under CPL 440.20 is denied for the several reasons stated above. Finally, defendant makes a number of challenges to the factual predicate for his June 24th arrest, and in particular accuses the alleged victim of perjury. None of these challenges were presented at the Outley hearing, however, and a challenge to the constitutionality of his arrest is not properly brought in this proceeding. The charge of perjury and evidence tampering is wholly conclusory and without factual support. To the extent that defendant is challenging the veracity of the proof presented at the Outley hearing, defendant fails to allege that the information that he now presents was not available to his counsel at the Outley hearing.

. The oral promise that the maximum sentence would be given upon a violation, coupled with the notice defendant received that he could not withdraw his plea by the crossed-out portion of the written agreement (i.e., the handwritten striking of that portion of the written form giving defendant a right to withdraw the plea if a higher sentence is contemplated), avoids the problem identified in Innes v Dalsheim (864 F2d 974 [2d Cir 1988]), relied on by defendant. Given the consistency between the interdeliniations on the written agreement and the express oral promise to defendant that he would receive the maximum sentence upon a violation of the plea agreement, defendant was unambiguously told “that his guilty plea could not be withdrawn.” (Supra, 864 F2d, at 979.) Those of defendant’s arguments which are drawn from Innes are, therefore, without merit. I note further that defendant did not seek to withdraw his plea on this separate ground at the Outley hearing. (People v James, 239 AD2d 243 [1st Dept 1997].) Defendant merely demanded specific performance of the two-to-four-year promise.

. The observation to the contrary in Spence (219 F3d, supra, at 169), that State law prohibits consideration of acquitted conduct, does not appear to be based on anything other than State cases interpreting the Federal Constitution. (See, infra, n 3.) As such, it is not an authoritative statement of New York law. (People ex rel. Central Park, N. & E. Riv. R. R. Co. v Willcox, 194 NY 383, 386 [1909]; Merrill Lynch, Pierce, Fenner & Smith v McLeod, 208 AD2d 81, 83 [1st Dept 1995]; Orange & Rockland Utils. v New England Petroleum Corp., 60 AD2d 233, 235 [1st Dept 1977].)

. In one case, People v Grant (191 AD2d 297 [1st Dept 1993]), the New York Constitution was cited in support of the proposition that a sentencing court cannot consider conduct that was the subject of an acquittal. But this observation appears to be sui generis in the New York cases and is not supported by reference to any State constitutional rule created by the New York Court of Appeals. In the absence of Court of Appeals precedent finding a separate State constitutional rule, Supreme Court should not create such a rule. *8 (Matter of Hynes v Tomei, 237 AD2d 52, 61 [2d Dept 1997], revd on other grounds 92 NY2d 613 [1998]; People v Keta, 165 AD2d 172, 177-178 [2d Dept 1991], revd on other grounds 79 NY2d 474 [1992]; People v Lucas, 183 Misc 2d 639, 644 [Sup Ct, Monroe County 1999]; cf., People v Robinson, 271 AD2d 17 [1st Dept 2000] [evidently leaving open whether an Appellate Division may first articulate a separate State constitutional rule at variance with Federal constitutional standards].)