**Ronald MASK, Petitioner–Appellant,**

**v.**

**Michael MCGINNIS, Superintendent, Southport Correctional Facility; Dennis C. Vacco, New York State Attorney General, Respondents–Appellees.**

**Docket No. 99–2396.**

United States Court of Appeals, Second Circuit.

Argued: May 16, 2001.

Decided: May 25, 2001.

Frank J. Loss, New York, NY, for Petitioner–Appellant.

Efrem Z. Fischer, Assistant Attorney General of the State of New York, New York, NY (Eliot Spitzer, Attorney General of the State of New York, Mark Gimpel and Michael S. Belohlavek, Assistant Solicitor Generals of the State of New York, on the brief), for Respondents–Appellees.

Before FEINBERG, VAN GRAAFEILAND, and SOTOMAYOR, Circuit Judges.

PER CURIAM:

Petitioner-appellant Ronald Mask, a prisoner in state custody, appeals from a June 22, 1999 judgment of the United States District Court for the Southern District of New York (Denny Chin, *Judge*) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d)(1). *See Mask v. McGinnis*, No. 97 Civ. 7211, 1999 WL 401668 (S.D.N.Y. June 17, 1999). Petitioner contends that the state trial court violated his right to due process under the Fourteenth Amendment of the United States Constitution by sentencing him to a term of imprisonment greater than that promised under his plea agreement without giving him the opportunity to withdraw his guilty plea. Finding that petitioner has failed to establish that the state courts unreasonably applied clearly established Supreme Court precedent, we affirm the district court's denial of the petition.

**BACKGROUND**

On April 23, 1986, petitioner pled guilty in New York Supreme Court, New York County, to one count of robbery in the second degree. The following exchange between the court and petitioner took place during the plea allocution:

THE COURT: Mr. Mask, I've agreed to cover your open jostling case and I've also agreed to give you a chance to prove you should not go to state prison. Now, keep something in mind. I am not promising you no jail. I am giving you a chance to prove that you should not be sent to state prison. Do not walk out of here with the idea that it will be only one-and-a-half to four-and-a-half years that you will get if you violate the conditions. Think five to fifteen, Mr. Mask. That's what you should think.

Now, I am going to make as a condition of the deferral of your sentence, putting off your sentence and letting you have a chance to prove you should not go to jail, that you cooperate and participate in the Manhattan Court Employment Program ["MCEP"] and in Jaycap ["J–Cap"].[1]

. . . . .

THE COURT: Now, if you prove to me that you should not go to state prison, I won't send you. I will give you youthful offender treatment; probably five years probation. If you don't prove it, you're going to jail; simple as that. Is that understood?

THE DEFENDANT: Yes.

During the interval between his allocution and sentencing, petitioner ceased participating in J–Cap and was arrested for a second robbery. On January 29, 1987, the trial court, finding that petitioner had failed to abide by the conditions of the plea agreement, denied youthful offender treatment and instead imposed a sentence of one and a half to four and a half years for the first robbery.

On the basis of a Court of Appeals decision holding that a trial court lacks author-

---

1. According to the trial court, MCEP and J–Cap are "private, non-statutory and non-governmental organizations. The former offers counseling and educational and employment training, the latter drug rehabilitation."

ity to place a defendant on "interim probation" in the interval between conviction and sentencing, *People v. Rodney E.*, 77 N.Y.2d 672, 569 N.Y.S.2d 920, 572 N.E.2d 603 (1991), the Appellate Division vacated petitioner's sentence for the first robbery and remanded for resentencing on the ground that the court-imposed condition that petitioner participate in MCEP and J–Cap constituted interim probation. *People v. Mack*, 194 A.D.2d 384, 599 N.Y.S.2d 1025 (4th Dep't 1993).

At resentencing on October 28, 1993, the trial court increased petitioner's original sentence of one and a half to four and a half years to a new sentence of five to fifteen years. In a subsequent written opinion, the court explained that, because its promise to sentence petitioner to probation rather than state prison was predicated on two distinct and independent conditions—(1) petitioner's participation in MCEP and J–Cap, and (2) petitioner's proving to the court that he should not be sent to state prison (the "proof condition")—the invalidation of the first condition had no effect on the second condition. The second condition, according to the court, implicitly provided that "the court's promise of probation was contingent upon defendant's not getting indicted for committing another felony." The court explained that, having found that petitioner had violated the proof condition by committing several additional violent crimes, the court was free to impose the maximum sentence of five to fifteen years.

On May 14, 1996, the Appellate Division affirmed, *People v. Mack*, 227 A.D.2d 218, 642 N.Y.S.2d 270 (1st Dep't 1996), and, on October 1, 1996, the Court of Appeals denied leave to appeal, *People v. Mack*, 88 N.Y.2d 1069, 651 N.Y.S.2d 413, 674 N.E.2d 343 (1996).

On September 26, 1997, petitioner filed the instant habeas petition. Finding that "petitioner's plea agreement did require him, explicitly or implicitly, to refrain from engaging in conduct pending sentencing that would lead to his re-arrest," the district court denied the petition on June 17, 1999. *Mask*, 1999 WL 401668, at *3. On April 4, 2000, we granted a certificate of appealability, and petitioner thereafter timely appealed.

## DISCUSSION

■ We review a district court's denial of a petition for a writ of habeas corpus *de novo*. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir.2000).

■ Petitioner's habeas corpus petition is governed by 28 U.S.C. § 2254. As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1218, Section 2254 permits a federal court to grant habeas relief if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court had occasion to construe this language. The Court interpreted "clearly established Federal law, as determined by the Supreme Court of the United States" as "refer[ring] to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* With respect to the "unreasonable application of" clause, the Court instructed that "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. In determining whether an application was objectively unreasonable, "the most important point is that an *unreason-*

*able* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S.Ct. 1495. Interpreting *Williams,* we have added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks and citations omitted).

■ According to petitioner, the clearly established Supreme Court precedent applicable to his case is provided by *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) and *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Petitioner specifically identifies *Brady*'s holding that "a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, ... must stand unless induced by [*inter alia*] ... unfulfilled ... promises," *Brady,* 397 U.S. at 755, 90 S.Ct. 1463 (internal quotation marks and alterations omitted), and *Santobello*'s holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, [due process requires that] such promise must be fulfilled" or the defendant must be given "the opportunity to withdraw his plea of guilty." *Santobello,* 404 U.S. at 262–63, 92 S.Ct. 495.

Petitioner argues that "the state court unreasonably applied clearly established Supreme Court precedent in deciding that [he] had no due process right to withdraw his plea when the trial court refused to honor [the] promised sentence" of five years probation and instead sentenced him to a term of imprisonment of five to fifteen years. More specifically, petitioner argues that the trial court's enhanced sentence would be justified only if the plea agreement "unambiguously implied a no-arrest condition"—that is, only if the state courts' interpretation of the agreement's proof condition were the only reasonable interpretation.

As noted, the trial court explained that the proof condition implicitly provided that "the court's promise of probation was contingent upon defendant's not getting indicted for committing another felony. No rational person could believe that a new crime would prove that he should not go to state prison...." Similarly, the Appellate Division found that "the [trial] court's statement at the original plea proceeding ... that '(defendant) would have to prove to the court that he should not be sent to state prison' put defendant on notice that the commission of further crimes would result in a harsher sentence." *Mack,* 642 N.Y.S.2d at 271. Without conceding that this interpretation of the proof condition is a reasonable one, petitioner contends that the "more reasonable" interpretation of the condition is that it "referred only to compliance with the conditions that had been stated explicitly" by the trial court, namely, petitioner's participation in the MCEP and J–Cap programs. Having purportedly established that the proof condition was ambiguous, "at best," petitioner infers that the state courts unreasonably applied *Brady* and *Santobello* because they "fail[ed] even to consider ... the possibility that the plea agreement was ambiguous."

Petitioner's argument must fail, however, because, even assuming that the proof condition were ambiguous in the manner suggested by petitioner, neither *Brady* nor *Santobello*—nor any other Supreme Court opinion for that matter—holds, as petitioner intimates, that "[f]ederal due process

requires that all conditions placed on a sentence promised in a plea bargain be communicated to the defendant unambiguously." Petitioner actually derives this doctrine from a pre-AEDPA opinion of this Court, *Innes v. Dalsheim*, 864 F.2d 974 (2d Cir.1988), rather than from *Brady* or *Santobello*. Petitioner characterizes *Innes* as "appl[ying] *Santobello* to hold that federal due process require[s] a state trial court to unambiguously inform the defendant at the time of a guilty plea about the consequences of breaching a condition of a plea bargain before those consequences can be enforced unilaterally." Assuming *arguendo* that this is an accurate formulation of *Innes*'s holding, petitioner has established, at most, that the state courts unreasonably applied clearly established *Second Circuit* precedent. Under AEDPA, however, petitioner is entitled to habeas relief only upon a showing that the state courts unreasonably applied clearly established *Supreme Court* precedent.[2]

▆ Furthermore, even assuming that the Supreme Court had adopted *Innes*'s ambiguity holding, we would not find that the state courts unreasonably applied this holding because we are not persuaded that petitioner's reading of the proof condition is reasonable. As noted, petitioner contends that the proof condition most plausibly refers solely to petitioner's participation in MCEP and J–Cap. As petitioner rightly insists, "[t]he words of the plea agreement control, and their meaning 'is measured by objective, not subjective standards.'" Pet. Br. at 24–25 (quoting *John-*

son v. Beto*, 466 F.2d 478, 480 (5th Cir. 1972)). Petitioner's reading of the proof condition, however, is inconsistent with the language of the plea agreement. Near the beginning of its remarks to petitioner, the trial court stated: "Do not walk out of here with the idea that it will be only one-and-a-half to four-and-a-half years that you will get if you violate the *conditions*." (Emphasis added.) The trial court then stated: "Now, I am going to make as *a condition* of . . . putting off your sentence and letting you have a chance to prove you should not go to jail, that you cooperate and participate in [MCEP and J–Cap]." (Emphasis added.) Because the trial court characterized petitioner's participation in MCEP and J–Cap as "a condition," yet referred earlier to the "conditions" petitioner had to meet in order to receive probation, the proof condition could not possibly refer solely to petitioner's participation in MCEP and J–Cap. Rather, it necessarily refers to one or more additional conditions.

Although the trial court did not explicitly identify this other condition (or conditions), the pertinent question is whether petitioner could have reasonably believed that his not committing additional crimes was not included among these other conditions. We agree with the trial court's answer to this question: "No rational person could believe that a new crime would prove that he should not go to state prison. . . ."

▆ Moreover, even assuming that we disagreed with the state courts' conclusion

2. Much the same can be said of petitioner's reliance on *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162 (2d Cir. 2000), to which petitioner calls our attention pursuant to Federal Rule of Appellate Procedure 28(j). Relying, in part, on *Innes*, *Spence* found that the trial court had "acted contrary to the basic tenets of due process." *Spence*,

219 F.3d at 169. Because the *Spence* petitioner's conviction became final before passage of AEDPA, however, *id.* at 173 n. 2, *Spence* did not address whether the state court had unreasonably applied "clearly established federal law as interpreted by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

that the proof condition was sufficiently clear to put petitioner on notice that he would get the maximum sentence if he committed additional crimes, we would find that this error did not rise to the requisite level of "objective[] unreasonable[ness]." *Williams*, 529 U.S. at 409, 120 S.Ct. 1495; *see also Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir.2000) ("Because we do not find it obvious on this record that a constitutional violation occurred ... under ... the federal ... constitutional standard, we likewise find the decision of the New York court to be a reasonable application of federal decisional law as set forth by the Supreme Court.").

## CONCLUSION

We have carefully considered petitioner's remaining arguments and find them to be without merit. For the reasons discussed, the judgment of the district court denying the petition for a writ of habeas corpus is hereby affirmed.[3]

---

3. *See McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1194 (2d Cir.1995) ("We need not affirm for the reasons expressed by the district court but may affirm on any ground supported in the record.")